EMMA CREVISOUR AND REVA DORIS CREVISOUR, APPELLANTS v. J. W. HENDRIX, RESPONDENT.—136 S. W. (2) 404.

Springfield Court of Appeals. November 27, 1939.

Rehearing Denied February 9, 1940.

*R. F. Baynes* for appellants.

*Ward & Reeves* for respondent.

TATLOW, P. J.—This is a Workmen's Compensation case, in which the Commission made an award to the appellants and the Circuit Court setting aside the award, the appellants have duly appealed to this court.

There is no question concerning the regularity of the proceedings or of the appeal, or the amount of the award of $2307. It is conceded that Harry Crevisour was in the respondent's employ and was killed on the 15th day of November, 1937, in an accident arising out of and in the course of his employment; that the appellants are his wife and daughter and were wholly dependent upon him. It is further conceded that neither the respondent nor the deceased ever elected to come under the Workmen's Compensation Act nor had either filed with the Commission a written notice that he elected to reject the act. Actual knowledge of the accident by the respondent was admitted. The sole and only question in the case is whether J. W. Hendrix, the respondent, was a "major" employer so as to come within the Workmen's Compensation Act, or a "minor" employer so as not to come within the act. The facts are undisputed and so conceded by both parties.

The only evidence in the case is the testimony of the employer and his time book, showing the number of workers, their names and the hours worked, a copy of which is plaintiffs' Exhibit 1.

The respondent and employer testified:

"My business is contracting, house moving, house building. . . . My business operations extend throughout southeast Missouri and northeast Arkansas. . . .

". . . I believe I am safe to tell you that two men is all that is depending on my work; I haven't got my (any regular) crew, I

pick a little crew up to do whatever job it might be: If I have a particular job I employ a particular number of men repuired to do it, and if I have a smaller job then I don't employ so many men and I never know today what kind of a job I may have tomorrow; so that my manner of employment depends entirely on the kind of a job I might get: and I pick up whoever I can get at that time and place: I don't of course, have any regular men employed that remain on my pay roll continuously except the two: and when I run out of work they are not on my pay roll: I retain them more regularly than others on account of their experience and having worked for me for a period of time.

". . . I think two days in a year I worked above ten men, now, more than that I had more than ten men for one or more hours, but I think two days in a year that I worked ten men, for a whole day, I mean for a whole day.

"Q. Of course, now if tomorrow you got a contract necessitating the employment of twenty-five men you would have that many men employed, wouldn't you? A. Well, I am not that sized contractor, I don't know if it was just something that bobbed up for one or two days I suppose I'd put them on, but I don't recall ever working that many men.

"Q. If you had a contract for moving a house or building a house or something in line of your work that required the employment of twelve or fifteen men you'd employ the number of men necessary to do the job? A. Yes, and as soon as I got through I'd let them go: unless I got another job, another contract: and that has been true with my many operations: I engaged in house moving and house building, and if you want to, I do lots of concrete work, but the concrete is in connection with house building; in that connection, this list of employees showing the number of hours, and the days they worked in this tabulation, it includes all of employees, the concrete business, moving and carpenter business: everything, all of it: I have no men employed around my place as caretakers: only cleaning up place, one once in a while: I am really doubting if I did employ any men around my place cleaning it up in the fall of 1937: I had a job on a hotel at Kennett sometime ago: it was before the accident: and I think that I could look that up, I think that was one of the places where the largest crew of men I had, possibly twelve or fifteen men: I think I had twelve or fifteen men on that job that worked about three days: I don't believe that was moved the year before this occured.

"MR. BAYNES: Q. I notice here, I could—I don't know if this would be any help to you, on this week ending July 3, 1937, you seemed to have a rather large list of names on that. Would looking at that refresh your recollection?

". . . THE WITNESS: That was the time—Let's see. I was working by the bay, that was not a crew of my men at all. Dorris

Motor Company, that was day work: that was on a job at Portageville not a contract job at all: Mr. Dorris at Hayti paid the men: I worked for wages too: The Pharr job was a man by the name of Parr, he lives in Memphis and he owns some land: the job was near Mariana: that was a day job, that was not my job, I did not pay the employees at work on that job; I was foreman hired by the day: I did not have a contract for that work: I paid the men in this way: Mr. Pharr would come out each week and get the time and would hand me the money, it was put in my hand and I delivered the money to the men just the same as I give the instructions, I handed out the checks so far as that was concerned, but it was Mr. Dorris' money on the other job; and it was just the same as on the other job: I was just an employee myself: I have a contract made: it is for Mr. Rone out south of Portageville: this book has shown here which I have identified, which includes the names of the men I would pick up locally, I tried to get it to include everything that was ever on the time book: everybody I paid any salary to or that worked on my jobs: I think if you will look through these books you will see it from one hour up; of course, as I said, the number of men employed depended on the size of the job at the time.

"CROSS-EXAMINATION BY MR. REEVES:

"With reference to these men that I did employ, say my job would run up as high as ten or eleven or twelve men, when I did not employ the same I had been employing but nearly always different men: in some instances here in my book I see that on two days I believe it is two, it runs up as high as sixteen men: they were men I picked up for that job: that particular job: when I had, say, more than ten men employed, eleven, twelve, thirteen, fourteen, fifteen or sixteen, those men that run up high for these few jobs, I did not undertake and did not get the same men that I had previously employed but just anybody I could pick up: the two men I stated that I had regularly employed were within a year before the accident: The early year, E. T. Wren and Harry Crevisiour, deceased: I went after them first, then later Wren dropped out and a man by the name of Farrar and he became my regular man: Now, then, I have two regular men, Farmer and Hutchins: that was after the accident: They were working before the accident too."

Exhibit 1, which is the weekly time book, gives the number of employees, their names, and the hours they worked each week, covering the period from the week ending November 21, 1936 to November 20, 1937. The date appearing at the top of the page represents the end of the week.

According to the time book there was no time during the period covered by the evidence when more than ten employees worked for the respondent for as long as five and one-half consecutive work days.

The nearest approach to it is the week ending December 6, 1936, and only seven men worked consecutively for the week. They were:

| | |
|---|---|
| E. T. Wren | 6 days |
| C. Wyatt | 6 days |
| P. Kimes | 6 days |
| J. Davis | 6 days |
| E. Durbin | 6 days |
| H. Crevisiour | 6 days |
| R. L. Bandy | 6 days |

The others, working less than five and one-half consecutive work days, were as follows:

| | |
|---|---|
| Lex Estes | 2 days |
| C. Morgan | 5 days |
| Lee Roberts | 5 days |
| Sam Ezell | 4 days |
| Sam Gresham | 4 days |
| Arch Capen | 4 days |
| E. Hudgens | 4 days |
| F. Adams | 3 days |
| B. Richardson | 1 day |
| Bush | 3 days |
| H. Turner | 1 day |

While the testimony of the employer (offered by the appellants) is not as definite as it might be, his testimony would indicate that, during the week of December 6, 1936, he was not an employer at all, but was only a foreman for a Mr. Parr. The most that can be said is that his testimony does not definitely establish that the men were not employed by him as their employer during that week.

The next week in which more than ten men were employed, was the week ending December 20, 1936. During this week there was two consecutive days on which twelve men were employed. During each of the other days of this week there were less than ten men employed.

The next week in which more than ten men were employed, was the week ending July 3, 1937. During this week there was one day on which fifteen men were employed. During each of the other days of this week there were less than ten men employed. He testified that he was only acting as foreman during this week.

During the week ending September 4, 1937, there were twelve men employed on Thursday and Friday, for ten hours each. On Saturday eleven men were employed for five hours each and one man for one and one-half hours.

During the week ending September 11, 1937, there were eleven men employed on Thursday. There were never more than ten men employed on any other day during that week.

During the entire period from November 14, 1936, to November

15, 1937, there were nineteen men who were employed separately and intermittenly for more than five and one-half consecutive work days; *but, at no time during that period, were there more than ten men employed together for more than five and one-half consecutive work days.*

The total number of men employed during the entire period was eighty-five. There were sixty-six employed for less than five and one-half consecutive work days and nineteen employed for over five and one-half consecutive work days. Six men were employed for as much as five consecutive work days; ten men were employed for as much as four consecutive work days; fourteen men were employed for as much as three consecutive work days; nineteen men were employed for two consecutive work days; and seventeen men were employed for only one day.

The first, and really the decisive question in this case, is whether the Workmen's Compensation Act fixes a definite test to determine whether the employer is a "major" one or a "minor" one.

Section 3302, Revised Statutes Missouri, 1929, provides:

"(a) A major employer shall mean an employer who has more than ten employees regularly employed.

"(b) A minor employer shall mean an employer who has ten or less employes regularly employed."

Under this section it is perfectly plain that, in order for the employer to be a *major* one, he must have more than ten men regularly employed in the conduct of his business. This section does not say for what period of time the ten men must be regularly employed in order to make the employer a *major* one.

The act further says (Sec. 3305, R. S. Mo. 1929):

"(d) An employe who is employed by the same employer for more than five and one-half consecutive work days shall for the purpose of this chapter be considered a regular and not a casual employe." It will be observed that this section primarily refers to the employe instead of the employer. One so employed for five and one-half consecutive work days is a regular and not a casual employe.

It would seem to follow, as an inevitable conclusion, that one so employed by an employer in the conduct of his business, for more than five and one-half consecutive work days, would, under the express terms of the statute, be a *regular* and not a casual employe. If so, it would seem to follow, also as an inevitable conclusion, that, where more than *ten* men are so employed for five and one-half consecutive work days, the employer so employing them would be a major and not a minor employer.

It is an elementary rule of almost universal application that the expression of one thing is the exclusion of another; that when the statute, as in this instance, defines a "regular" employe "for the purpose of this chapter," an employer who employs more than ten

persons who are expressly declared by the chapter to be regular employes, necessarily and inevitably becomes a major employer, for the statute, in express terms, defines such an employer to be one who has more than ten employes regularly employed. There would seem to be no possible escape from this conclusion, and especially so when the statute itself goes further and says that a minor employer shall mean an employer who has ten or less employes regularly employed. This would seem to fix the test to determine whether an employer was a major or a minor one, with mathematical certainty.

The statute does not, in express terms, fix the period for which the more than ten men must be employed for the five and one-half consecutive work days in order to make the employer a major employer. We think that the period to which this provision applies is any reasonable period after the adoption of the Workmen's Compensation Act (perhaps limited to one year just preceding the accident) during which an employer employs more than ten men regularly in the conduct of his business for more than five and one-half *consecutive* work days. The length of the period in the instant case is reasonable, as it is limited by the evidence from October 14, 1936, to November 15, 1937, the day of the accident which resulted in the death of the employe.

If the employer in the instant case had more than ten *regular* employes, as defined by the statute, employed for as much as five and one-half consecutive work days, at any time during that period then he was a *major* employer within the meaning of the act. If he did not have more than ten regular employes so employed for that period of time, then he was not a major employer, but a *minor* one. That is so even though he did have more than ten regular employes employed for less than five and one-half consecutive work days. The statute does not seem to be susceptible to any other construction and we think that this is the construction that must be given it; otherwise you necessarily read out of the statute the provision requiring the employment to continue for five and one-half consecutive work days in order to make the employe so employed a regular and not a casual employe, and in order to make his employer a major one instead of a minor one. Any other construction renders meaningless the provision requiring the employment to be for as much as five and one-half *consecutive* work days.

By defining the period of time necessary to make one a regular employe, the statute necessarily says that one who has not been so employed for that length of time is not a *regular* employe, but, in the language of the statute, is a "casual" employe. We think that this is the construction that has been placed upon the statute by the courts of this State as far as they have been called upon to construe the statute. The statute deals with the *status* of both the employer and the employe. The statute is a part of the contract of employment. It is

necessarily written into the contract, whether the contract be an express or an implied one, for it provides:

'Every employer and every employe, except as in this chapter otherwise provided, shall be conclusively presumed to have elected to accept the provisions of this chapter and respectively to furnish and accept compensation as herein provided, unless prior to the accident he shall have filed with the commission a written notice that he elects to reject this chapter. . . .'' [Sec. 3300, R. S. 1929.]''

This plainly, and beyond any question, makes the statute a part of the contract of employment. This, we think, is perfectly self-evident.

We think that this is the construction that has been put upon the statute by the Kansas City Court of Appeals in the case of Barlow v. Shawnee Inv. Co., 48 S. W. (2d) 35, which case was relied upon by the commission and is relied upon by the appellants to sustain the award in the instant case. It is a very fully considered case and exhaustively considers a number of questions which arose in that case, but which are not involved in the instant case. The question involved in that case, so far as applicable to the instant case, was not whether the employer had more than ten men regularly employed for more than five and one-half consecutive work days at some time during the period covered by the evidence, but whether, because he did not have more than ten men so employed *at the time of the accident*, he was, for that reason, not a *major* employer.

In resolving this question the court concluded that the decisive question was not whether the number of regular employes was more than ten on the day of the accident, but whether, during the period of employment, the employer had *at any time* reached the *status* of a major employer.

In that case it is said:

'' (19) We have carefully considered all of the objections made to the persons named in the list of sixteen claimed to make up the list of regular employees, regularly employed, and find that there are still more than ten of that number. Hence, there being substantial evidence to support that claim, we cannot disturb the commission's finding in that regard. [48 S. W. (2d) l. c. 49.]''

That case did not involve the question of whether the more than ten men had been regularly employed as much as five and one-half consecutive work days. The more than ten men so employed were employed consecutively and continuously and there was no issue of fact as in the instant case with reference to the number of consecutive days that those constituting more than ten men were regularly employed. The issue with reference to those who should be excluded from the count was whether they were employes in any sense of the word, as is clearly indicated by the opinion, where it is said:

''Claimant, in her brief, has compiled a list of *sixteen persons* who she claims were 'in the service' of the employer on the day of the ac-

cident. As to these, and the number of employees regularly employed, the record discloses the following:

"1. Jannan G. Baker, wife of Frank C. Baker (who was the president of, and a director in, the corporation, *and owner of all the stock therein*, except such few shares as were issued to persons to enable them to qualify as directors). Mrs. Baker can in no sense be termed an employee. She was a director, but received no compensation, and, so far as the record discloses, did nothing beyond the usual duties of a corporate director owning perhaps but one share), which is to vote according to directions.

"2. Frank C. Baker, who, as above stated, served as president and director, performing the ordinary duties of those offices. He received a salary of $100 per month for those services, but no other compensation, and, so far as the record disclosed, did no other work in the business outside of duties appertaining to such offices of president and director." [48 S. W. (2d), l. c. 46.]

They were excluded from the list, not for the reason that they had not worked at any time for five and one-half consecutive work days, but because they were in no sense employes of the corporation.

The issue with reference to Frank W. Nelson, who was a vice-president and director of the corporation, was not whether he was a regular employe, but whether he should be excluded from the count because his compensation exceeded $3600 per year, as provided in the act.

Hence, it is quite plain that there was no issue in that case as to the necessity of an employe's being employed for as much as five and one-half consecutive work days *at some time* during the period covered by the evidence and while the Workmen's Compensation Act was in force, to fix the *status* of the employer and employe so as to become a part of the contract of employment.

In determining the question, the court in that case held that it was sufficient to fix the *status* of the employer as a major one, and of the employe as a regular instead of a casual one, if he had at any time been so employed for five and one-half consecutive work days, even though on the day of the accident there were not more than ten of such employes.

The case says:

". . . Consequently in the case at bar, if it be found by the commission, under evidence sufficient to raise an *issue* as to the matter, that the employer has more than ten regular employees, that is, employees under contract of employment which contemplates work for, and which employees do actually work for, more than five and one-half consecutive days, then such employer is a major employer, unless enough of such employees, to bring the number down to ten or less, are found to be either receiving annual earnings of more than $3600, or are engaged in performing work not incident to the operation of the usual business of the employer. . . ." [48 S. W. (2d), l. c. 45.]

Observe that the court there follows the statutory test and requires that the employes must work for more than five and one-half consecutive days. They must be "more than ten" or, in other words, at least eleven. They must be employed for five and one-half consecutive work days. The "five and one-half consecutive work days" applies, not to the *individual* employe but to the class or group of employes, to-wit, "more than ten." The employer is not brought within the act, if he at different times and not concurrently, employs more than ten different employes scattered through the period of employment. In other words the number "ten or more" is as important in determining the *status*, as is the length of the employment of "five and one-half consecutive work days."

The court has no power to strike out of the statute or disregard the express provision requiring more than ten employes to constitute the class, nor the provision requiring the class to be employed at some time during the employment for as much as five and one-half consecutive work days, or, in other words, a full work week. The statute deals not only with the class but with a full work week in order to create the status and to make the statute a part of the contract of employment. That the courts have no power to disregard these plain statutory provisions is elementary law, and, in addition thereto, it has recently gone to judgment in a unanimous opinion of our Supreme Court *en banc,* that a court has no such power. If the statute is not liberal enough, or is too liberal, that is a matter for the Legislature to correct, and not the court; the court has no jurisdiction to do so. [Sayles v. Kansas City Structural Steel Co., 128 S. W. (2d) 1046.]

The case of Barlow v. Shawnee Investment Co., *supra* (48 S. W. (2d) 35), further says:

". . . The relation of employer and employee under the Compensation Act is one of contract, and the act is a part of every contract which comes thereunder. When the statute (section 3300) says that, under certain circumstances, an employer is 'conclusively presumed' to have 'elected' to accept the provisions of the act, this presumption of election relates, not merely to the time of any particular accident, but refers to the term of his *status* as an employer under the law whenever that *status* arises. (Otherwise there would be little use in the statute requiring him to file notice of rejection prior to the accident.) In other words, if, after having once reached the *status* of a major employer, his election or presumed election to accept the provisions of the act *continues,* in the absence of a written rejection, even though the number of employees may change intermittently. The act having once become a part of the employment contract, either by express election or by conclusive presumption, it can be canceled only by written filed rejection. Otherwise, the employer would be in or out of the purview of the act from day to day, according as the number of his regular employes, or 'employees regularly employed',

fluctuated from day to day. This would be intolerable and prejudicial to both employer and employees, since neither would know what his rights were on any day until he had first taken a careful enumeration of the employees for that day, including items as to the nature of their work, the amount of their pay (whether over $3,600 per year of not), and the length of time of service contemplated or actually rendered. . . .'' [48 S. W. (2d) l. c. 45, 46.]

This reasoning is equally applicable here and sustains the conclusion we have reached, that the statute itself definitely fixes a class of more than ten employes who, at some period during the employment, were employed to work consecutively as a class, and not as individuals for five and one-half consecutive work days. So that both the employer and the employe would have a definite test and a definite time by which they could determine whether they were or were not under the act.

The Barlow case, so far as it is applicable, sustains our conclusion.

We find nothing in the case of Carrigan v. Western Radio Co. et al., 44 S. W. (2d) 245, cited by the appellants, that throws any light on the question before us. It holds that, where a major employer regularly employed an employe who was injured the next day after the employment, such an employe is entitled to compensation. In that case it is said:

''. . . The contract of employment was oral, and no mention was made as to the exact nature of claimant's duties, or as to the period of time for which he was employed. . . .

''At the time of plaintiff's injury, his employer was operating under the Missouri Workmen's Compensation Act (R. S. 1929, sec. 3299 et seq.), and had insured against this liability under said act, through a policy issued by the appellant Zurich Insurance Company. . . .'' [44 S. W. (2d) l. c. 245.]

In that case the court was evidently of the opinion that the commission was justified in drawing the inference that the employment was for an indefinite period and not limited to less than five and one-half consecutive work days. Referring to this provision, the court in that case said:

''This section clearly is not controlling in the case at bar. It was not the intent of the Legislature to establish a hard and fast line of distinction between a regular and a casual employee, but rather to declare that if a laborer entered the employ of an employer and pursued his duties for a period of five and one-half days, for the purpose of the chapter, he is to be considered a regular and not a casual employee. Any other construction would be contrary to reason. Suppose, for instance a laborer enters the employ of another under a written contract of employment fixing the term of his employment as one year, and the wages to be paid, and he is injured on the day he begins his work. Can it be successfully contended the

employee is not entitled to the benefit of the act? Such a construction would border on the ridiculous." [44 S. W. (2d) l. c. 248.]

If, on the other hand, he has been definitely employed for only one day, we do not see how he could have been a regular employe when the statute says, in express terms, that, in order to be such, he must have been employed for five and one-half consecutive work days. The hypothetical question *supra* which the court thought demonstrated that one who was employed for a year, who had worked for only one day under his employment would be within the act, shows by the same line of reasoning, that one employed for only one day would not be a regular employe within the act. One employed for a day, who is injured through the negligence of his employer, could undoubtedly maintain an action therefor, and the employer could not successfully invoke the Compensation Act as a defense unless you write out of the statute the provision requiring the employment to be for five and one-half consecutive work days, to make him a regular employe and bring him under the act. There is no doubt in our minds but that the court reached the right conclusion in the case, but should have assigned as the reason, that his employment was not limited to less than five and one-half consecutive work days; and the coincident that he was injured on the first day that he worked instead of on the sixth day, did not take him out of the act.

Neither do we find anything in the case of Sonnenberg v. Berg's Market, 55 S. W. (2d) 494 (St. Louis Court of Appeals), decisive of the instant case. That case holds that, where a major employer regularly employed a meat cutter for every Saturday, he was a regular employe, entitled to compensation, even though employed regularly only one day in the week. It is quite apparent to us that such a person would be a regular employe within the general and ordinary meaning of the word "regular," which means recurrent and continuous employment either limited or unlimited as to time; but it is equally apparent that such an employe would not be a regular employe within the statutory definition that he must be employed for five and one-half *consecutive* work days.

We are not called upon to decide whether the court was justified in drawing the distinction that it did in that case in following the decision of the Idaho Court, as follows:

" 'Appellants in their brief confuse the statute when they say that the exclusion is of those "who are casually employed." The exclusion is of the "casual Employment," not necessarily the casual "employee;" not those "persons" but those "employments" are necessarily excluded which are "casual." . . .' "

If the Carrigan and Sonnenberg cases could be construed to hold that the court is justified in reading out of the statute the provision requiring more than ten employes to be regularly employed for as much as five and one-half consecutive work days at some time during

the period of the operation of the business (within the period covered by the evidence in the instant case), then, in our opinion, those decisions undoubtedly amend the statute by disregarding its plain terms, by referring to the beneficent policy of the act. That the court has no authority to do so is clearly announced in the last controlling judgment of the Supreme Court, *en banc*. [Sayles v. Kansas City Structural Steel Co., 128 S. W. (2d) 1046.] That opinion concludes as follows:

"Conceding that the Compensation Law was enacted for a beneficent purpose and should be construed so as best to effectuate that purpose so far as that can legitimately be done, we must take the statute as we find it. We are not at liberty to write into it, under the guise of construction, provisions which the Legislature did not see fit to insert. Had the Legislature intended to exclude only employments under the contracts for a definite term of one full year or more it could easily have said so in plain terms. If the statute needs alteration it is for the Legislature, not the courts, to make it. . . ." [128 S. W. (2d) 1. c. 1054.] For the identical reason, the courts are not at liberty to write out of the statute, under the guise of construction, plain and unambiguous provisions which the Legislature saw fit to insert therein. The Legislature is conclusively presumed to have intended what it plainly and unambiguously said. If the statute so written needs alteration, it is for the Legislature, and not the court, to make it.

The burden is upon the appellants in this case, who are relying upon and claiming under the Workmen's Compensation Act, to bring the employer within the act as a *major* employer. This has been directly decided by the Supreme Court, so that it is no longer an open question. [Kemper v. Gluck, 327 Mo. 733, 1. c. 742, 39 S. W. (2d) 330; State v. Trimble (Mo.), 63 S. W. (2d) 83.]

The week in which the greatest number of men worked for the respondent for as long as five and one-half consecutive work days, was the week ending December 6, 1936. While the evidence is not as definite as it should be that the men were not working under the respondent as their employer but were working under him as their foreman, we think that this week should be excluded under the authorities *supra*, for the reason that the burden was on the appellants to establish that the crew was employed by the employer at that time. But, assuming that the commission was authorized to find that they were so working for him as their employer, the fact remains that there were only seven men who worked during that week for as much as five and one-half consecutive work days. Hence, as we see it, the proper solution to the question comes down to whether the "ten employes" referred to in the statute, relates to a class, or group or crew who were regularly employed and worked for the employer, in carrying on his usual and ordinary business, for five and

one-half consecutive work days, or, in other words, for a work week. It seems to us that it is a class that is referred to, and it is the only reasonable construction that can be given the statute and that the employer is not brought within the statute unless this condition exists.

If this is the correct construction of the statute, then, on the undisputed evidence, the employer was not a major one within the meaning of the statute, and the appellants are not, as a matter of law, entitled to compensation.

On the other hand, if the fact that the respondent employed separately and intermittently, nineteen men who worked for five and one-half consecutive days at various times during the period covered by the evidence, makes the respondent a *major* employer, then, as a matter of law, his beneficiaries, on the undisputed evidence in this case, were entitled to compensation under the statute. We cannot agree to this last conclusion.

The Supreme Court in the case of State v. Trimble, *supra* (63 S. W. (2d) 83, l. c. 87), says:

". . . A mere showing that eleven men were employed in the business, without any showing that they were the character of employees designated in the statute, was not sufficient to show that defendant was a major employer. . . ."

As we construe the statute, we think it plainly provides that the "more than ten employes" must have been employed in respondent's business as a class, group, or crew for five and one-half consecutive work days, or, in other words, for a work week, as the statute refers to the "ten employes" as a class or as a whole and not as separate individuals. If the Legislature had meant that the employment at separate times of more than ten men, for as much as five and one-half consecutive work days would make the employer a major one, it could easily have said so.

The appellants' contention that the employment of ten men, to work for as much as five and one-half consecutive work days at any time during the period covered by the evidence, would make the employer a major one, is sought to be sustained by several authorities from other States.

They lay the greatest stress on the decision of the Supreme Court of Alabama, Mobile Liners v. McConnell, 220 Ala. 562, 126 So. 626, l. c. 630, where it is said:

"There is analogy to be found in decisions defining the words 'regularly employed' and those of 'casual employment.' The word 'regularly,' as used in the statute, refers to the question as to whether *the occurrence is or is not in an established mode or plan in the operation of the business, and has not reference to the constancy of the occurrence.*"

This decision, it seems to us, so far as it sheds any light on the question here involved, is against the appellants. It was undoubtedly

"an established mode or plan" of the respondent in the operation of his business, arising out of the very character of his business, to employ a crew to perform each job as the occasion arose. But, even so, the number of the employes so employed, as well as the number of consecutive work days for which they were employed, must come within the statute. That is, they must be "more than ten" and they must be employed for as much as "five and one-half consecutive work days." This, too, although, on account of the character of the business that the respondent was engaged in, the employment would necessarily be intermittent and not constant or continuous.

The court in that case further said:

" 'It is true that at the moment of the injury the musicians were not playing. That circumstance has no more significance than has the fact that when a night watchman in a large factory is hurt he may be the only person on duty. The test is, what in the period of time, of reasonable extent, of which that moment forms a part, is the force which was engaged in carrying on the common enterprise.' " [126 S. l. c. 630.]

The "moment" there referred to, as applied to the instant case, under the respondent's method of carrying on his business, as well as under the statute, would have reference to the week that the crew was employed for five and one-half consecutive work days. The crew, in the instant case, in the "force" there referred to. Hence, as we read the Alabama decision, by applying the test that the court applied in that case to the undisputed facts in the instant case, the respondent was not a major employer within the Missouri statute.

It would extend this opinion to an unreasonable length to discuss all the cases from other States cited by the appellants. They seem to us to go no further than do the Missouri decisions—that the statute is to be liberally construed and doubts resolved in favor of the employe. But this does not bring the respondent within the statute when he does not come within its terms.

We do not agree with counsel for appellants in his contention as follows:

"If the trial court is to be upheld in this instance, a person engaged in the same business as respondent herein, could never be brought within the terms of the Workmen's Compensation Act, and the clear legislative intent of said act and the act itself would be completely defeated."

The employer could and would be brought within the act if he employed more than ten regular employes for five and one-half consecutive work days, in the conduct of his business, during the period covered by the evidence. But we cannot be brought within the act, contrary to the express provision therein, on the general policy of the act that requires the doubt to be resolved in favor of the employe or his beneficiaries. The statute itself plainly and unam-

1028

biguously fixes the test to be applied to determine whether he is or is not a major employer and the courts have no authority to change, alter or disregard the statutory test by referring to the beneficent policy of the act.

In our opinion there is no possible escape from the conclusion that the judgment of the trial court should be, and it is affirmed. *Smith* and *Fulbright, JJ.*, concur.