RICHARD H. SMITH, EMPLOYEE, APPELLANT, v. ROBERT GRACE, DOING BUSINESS AS GRACE CONTRACTING COMPANY, EMPLOYER, RESPONDENT.—159 S. W. (2d) 383.

St. Louis Court of Appeals. Opinion filed March 3, 1942.

Motion for rehearing overruled March 17, 1942.

92

*Claud C. Cox* and *Joseph Nessenfeld* for appellant.

*George W. Wellman* for respondent.

ANDERSON, J.—This is an appeal from a judgment of the Circuit Court of the City of St. Louis, Missouri, reversing an award of the Missouri Workmen's Compensation Commission, in favor of the claimant, appellant, and against Robert Grace, doing business as Grace Contracting Company. The commission found that respondent, although not the immediate employer of claimant, was liable for compensation under Section 3308 (c), Revised Statutes Missouri 1929, now Section 3698(c), Revised Statutes Missouri 1939.

The record shows that respondent had a contract with the Home Owners' Loan Corporation to renovate and repair a building at 5041-43 Kensington Avenue in the City of St. Louis, Missouri. It was entered into on September 30, 1937, and by its terms required respondent to commence work within two days and to complete same within fifteen days, unless prevented from doing so by unavoidable causes beyond his control. The contract, which provided for work

consisting of carpentry, wall papering, interior and exterior painting, electrical wiring, heating, sheet metal work, plastering, marble work, glazing, sodding, cleaning up, and furnishing window shades, was performed mainly through subcontractors. Prior to October 6, 1937, the date claimant was injured, the carpenter work had been sub-let to one Gus Ernst, and the sheet metal work to Jesse Allison, the employer of the claimant herein.

On the day in question Allison sent three of his regular employees, the claimant, William Jordan, and John Jordan, to the Kensington Avenue premises, with instructions to repair the furnace and clean out the radiators in said building. While thus employed, claimant received the injury which is the basis of this proceeding, and which consisted in the loss of an eye, due to a piece of metal lodging therein while claimant was engaged in cutting a pipe with a hammer and chisel.

The sole point at issue upon the hearing was whether respondent was a major employer within the meaning of the compensation act. Claimant admitted that he was not a direct employee of respondent, and liability was sought to be imposed upon him under the provisions of Section 3308 (c) Revised Statutes Missouri 1929. The referee found "that Robert Grace, doing business as Grace Contracting Company was a major employer and therefore under Section 3308 (c) is deemed to be the employer of Richard Smith, who was an employee of Jesse Allison, a subcontractor under said Robert Grace and Grace Contracting Company."

The evidence showed that in addition to the three employees Allison sent to work at 5041 Kensington Avenue on October 6th, Gus Ernst, who had the contract to do the carpentry work, was on the premises at the time.

Claimant also introduced in evidence certain entries from respondent's social security records for the year 1937, which were taken from respondent's payroll records. The social security records showed Leona Wegman worked one day in March, cleaning, and received as pay the sum of $2; Joe Lange worked one day in March; Marcella Klein worked two days in March, doing office work, for which she received $3; W. Hearn worked two days in March; Alvin Lowenstein worked as a cleaner for two days in March; John Fisher worked one day in March, and two days in April; Rose Puckett worked three days in April; Lucille Ford worked three days in May; Willie Tucker worked three days in May; Della Smith worked three days in May; E. Stricker worked one day in May; Elmer Overby, a night watchman, worked one week in May; Arthur Richardson worked about five days in July; Charles Hamilton worked one day in July; C. E. White worked one day in September; and Dora Lightner worked five days in September. There is nothing in the record to show that any of the foregoing named persons worked on the same day, and

the record is clear that their employment terminated long prior to the date of claimant's injury. In fact, the record shows that all of them were people described in the evidence as "hard up," to whom Mr. Grace gave work for a day or so whenever he felt he could do so. While the work they performed was incidental, and reasonably necessary to the operation of the usual business conducted by Mr. Grace, they were casual employees in the sense that their employment was never contemplated as being of a permanent nature. There was no regularity in their employment, and no expectation of continuance of same for any particular length of time. However, in determining whether or not respondent was a major employer, they should be counted as regular employees because of the nature of their work. [McFall v. Barton-Mansfield Co., 333 Mo. 110, 61 S. W. (2d) 911.]

In addition to the persons listed above, the record showed that Charles M. Bugg worked for the respondent from February to and including November; P. G. Hoffman, listed as superintendent, worked from April to and including October; Trubie Bellamy did cleaning work from May to and including September; John Saukliss worked some time during May, June, and October, the number of days not being shown; H. L. Parsons worked from June to and including October; Kathleen Buzzarte did office work from June to and including October, the exact dates and number of days not being shown. Mrs. Grace testified that Kathleen Buzzarte was just called in in the evening when Mr. Grace had typing to be done; that they paid her whatever she thought it was worth, $7.50 in June, $11.50 in July, $10.25 in August, $2.50 in September, and $5.00 in October. She had other employment, teaching tap dancing, but came in to do work for Mr. Grace in the evening whenever he had typing that had to be done. William Zelle did office work from July to and including October. Edith Kuethe worked the last two and one-half weeks in October. The record also shows that before Mr. Zelle came to work for respondent, in July, 1937, Mrs. Grace would take care of telephone calls and help out in the evening typing specifications. The record also shows that H. Goodman, a subcontractor, did some hauling and cleaning during April.

From the foregoing evidence it will be observed that the record fails to show that at any one time prior to October 6, 1937, respondent had more than ten persons in his employ. It is not enough for one claiming compensation from another to show that the latter at different times, and not concurrently, employed more than ten employees scattered through the period of employment. It must be shown that on the day of the accident, or at some time prior thereto, he employed more than ten persons together. [Crevisour v. Hendrix (Mo. App.), 136 S. W. (2d) 404.]

But, did respondent have more than ten employees on October 6, 1937, counting those employed on the Kensington Avenue premises

by subcontractors? The record shows that on that date respondent himself had the following regular employees: Charles M. Bugg, P. G. Hoffman, H. L. Parsons, William C. Zelle, and John Saukliss. The record further shows that working on the premises on that date as employees of the subcontractor, Allison, were: the claimant, William Jordan, and John Jordan. These men must be counted as employees of respondent to determine whether he was a major employer at said time. [Pruitt v. Harker, 328 Mo. 1200, 43 S. W. (2d) 769.] Adding these employees of Allison to those regularly employed by respondent does not make a total sufficient to make respondent a major employer.

Appellant contends that the evidence was sufficient to warrant the commission in finding that Frank Ross and Gus Ernst were employees of respondent rather than independent contractors.

Frank Ross testified that he was a carpenter and had done general repair work for Mr. Robert Grace prior to October 6, 1937. He named several premises at which he had done such work, but gave no dates except to say that he began work for the Grace Contracting Company some time in the summer prior to October 6, 1937. He stated that he knew Mr. Hoffman. If the specifications were not complied with, Hoffman would call his attention to it. Ross further stated that he divided the money he received from the contract price with his brother-in-law who helped him, and that he, Frank Ross, would bid on all work he did for Mr. Grace, and if his price was low, Grace would give him the work, and he, Ross, would go ahead with it.

He further testified:

"I know Mr. Hoffman, whose position when I first knew him was inspector for the H. O. L. C. I believe that he was working for Mr. Grace during September last year.

"Q. How does he go about inspecting—just what does he do? A. Just what any other man would do—look the work over.

"Q. Did he ever have you make any changes in your work? A. At times, yes.

"Q. Why would the changes be made necessary? A. To comply with the work orders.

"Q. Then your work would be changed according to his instructions? A. Yes.

"Q. Would he tell you how to go about making the changes that are required? A. Sure.

. . . . . . .

"Q. You mean by that if the specification was not complied with, he called your attention to it? A. Exactly.

"Q. Then you would change it according to the specifications? A. Exactly.

"Q. If any mistakes were made they had to be corrected? A. Yes."

Mr. Grace, who was called as a witness for claimant, testified:

"I sublet all of my work, except that I have Buggs and H. L. Parsons employed to do cleaning up. All my other work is sublet or contract work, by men who give me bids on the work."

He also testified as follows:

"Gus Ernst did the carpenter work, glazing and roofing on the Kensington job. His contract is dated Oct. 5th. He did the work called for in the specifications. . . . Ernst worked by himself until after the accident. . . . The contracts for the work at 5041 are all dated after the date of the accident except the carpentry work. On that date there was no one except the carpenter working there under this contract; and the only men I had working there on this date were the carpenter and two men cleaning the wall paper.

"Hoffman, my superintendent, goes on the job and if he sees anything is wrong, he might ask if the man that is doing the contract is there. As a rule he always is. If not, he will call me that night if he cannot get in touch with the subcontractor.

"Q. Mr. Hoffman merely goes around to check up, and see whether or not the subcontractors are performing the work in accordance with the specifications? A. Yes.

x "Q. If Mr. Hoffman found something wrong with the work, what would he tell the subcontractors? . . . A. Just like I said, he gets in touch with the subcontractor and tells him what is wrong and tells him to correct it. If he cannot get hold of the subcontractor, he calls me and tells me what is wrong and in the morning often gets in touch with this man and tells him to make the correction in the work.

"This occurs on all contracts. No job can go all the way through where there is not something that has to be corrected. Mr. Hoffman checks the jobs sometimes once a day, and sometimes twice a day, and sometimes he skips a job."

Gustave Ernst testified:

"I have had a contract for every job I did. . . . I did carpentry and repair work at 5041 Kensington Avenue. . . . Mr. Phil Hoffman is an inspector who works for Mr. Grace, looking after his work. He inspects the work if it is done right or wrong.

"Q. Does he tell you how to do your work? A. We have a specification and have to do it accordingly. If it is not right I have to do it over.

"Q. When do you see Mr. Hoffman, after you finish or while the work is going on? A. Comes on the job once or twice a day and looks over it.

"Q. Does he say anything? A. If it is wrong, he will say something, if it ain't, o. k.

"Q. Has you correct it? A. Yes. I ask him for information and he will tell you to correct it.

"My contract is dated October 5, 1937, and did not start to work there before that date. All of the work I did for Mr. Grace, I bid on it and then I sign a contract."

Even though Mr. Hoffman did order changes, so as to make the subcontractor comply with his contract or specification, this is not sufficient evidence to warrant a finding that either Ross or Ernst were employees. It only shows that respondent was exercising his right to look to his subcontractors for results, and to have the contracts and specifications performed in accordance therewith. There is no evidence whatever in the record to show that respondent had any power to direct the details of the work other than to insist upon the fulfillment of the contracts.

Appellant further contends that to ascertain whether or not respondent was a major employer, the employees of various subcontractors doing work for Grace on other jobs should be counted as employees of the respondent.

On the other hand, respondent contends that a proper construction of Section 3308 (c), under which liability is sought to be imposed in this case, requires a holding that the only employees of subcontractors that may be counted as employees of the principal contractor under said section are those engaged in work on the premises where the claimant is employed and sustains the accident, and not on other premises where the principal contractor is engaged in other work.

Subsection (a) of Section 3308, Revised Statutes Missouri 1929, provides that any person who has work done under contract on or about his premises, which is an operation of the usual business which he there carries on, shall be deemed an employer, and shall be liable when the employee is injured or killed on or about the premises of th employer; and Subsection (c) of said section makes an exception, which provides that this section shall not apply to the owner of premises upon which improvements are being erected, demolished, altered or repaired, by an independent contractor, but such independent contractor shall be deemed to be the employer of the employees of his subcontractors and their subcontractors when employed on or about the premises where the principal contractor is doing work.

Respondent says that when subsections (a) and (c) of Section 3308, Revised Statutes Missouri 1929, are read together, it will be seen that the General Assembly intended to connect the place of injury to the place where the work was being performed, and that, therefore, the employees of subcontractors at other places cannot be counted for the purpose of bringing respondent within the act as a major employer.

Section 3308 (c) does not on its face contain the limitation contended for by respondent. It merely makes the employees of sub-

contractors employees of the principal contractor when they are actually at work on premises where the latter is doing work. But, once this status is created, we believe that under the doctrine of Pruitt v. Harker, 328 Mo. 1200, 43 S. W. (2d) 769, all employees of subcontractors when actually so engaged should be counted in determining whether the principal contractor is a major employer, whether they are employed on the premises where the accident happened, or elsewhere, so long as they are actually employed on premises where the principal contractor is doing work. In other words, the question presented is, How many employees has the principal contractor? And, in the absence of a provision in the statute limiting the statutory employees to those on the particular premises, all employees, whether common law or statutory, should be counted. There is no reason for any limitation. To place the restriction on the statute, which respondent contends for, would be contrary to the statutory mandate contained in Sec. 3764, Revised Statutes Missouri 1939, which provides that all provisions of the Act shall be liberally construed with a view to the public welfare, and would be in conflict with those cases construing said section, which hold that any doubt respecting the right to compensation should be resolved in favor of the employee. [Betz v. Columbia Tel. Co., 224 Mo. App. 1004, 24 S. W. (2d) 224.] And would also be in conflict with those cases which hold that the Act should be liberally construed in furtherance of the purpose to provide compensation for all accidental injuries arising out of and in course of employment. [Howes v. Stark Bros. Nurseries & Orchards Co., 223 Mo. App. 793, 22 S. W. (2d) 839.] The purpose of the provision under review was inserted in the Act to prevent the principal contractor from escaping liability under the Act by a series of subcontracts with minor employers and perhaps leaving the employee without any remedy under the Act. [De Lonjay v. Hartford Accident & Indemnity Co., 225 Mo. App. 35, 35 S. W. (2d) 911.] Such would be the result in this case if we adopted respondent's construction of Section 3308 (c). This we are unwilling to do. We are supported in our construction of the Act by Mr. Schneider, in his Workmen's Compensation Text, Vol. 2, Permanent Edition, Section 592, Page 578, where he says:

"The question of whether all the employees of several sub-contractors working on entirely different premises for a general contractor who is conducting several projects for different owners should be counted to make the general contractor a 'major employer' within the meaning and coverage of the Missouri Act would seem to require, for the reasons hereinafter enumerated, an affirmative answer in Missouri, regardless of the apparently sound reasoning quoted above from the opinions in the Connecticut and Wisconsin cases. Subsection of Section 3308c (1939 Code, Sec. 3698) of the Missouri Act makes the general contractor the employer of the employees of his

'subcontractors when employed in or about the premises where the principal contractor is doing work.' In the light of the Missouri decisions, the word premises would most likely be construed to include all the 'premises' on which the general contractor is doing work.. The Missouri courts have construed the purpose of the statutory employer section of the act as being: to prevent the principal contractor from avoiding liability by employing a series of subcontractors who are not insured or do not have the required number of employees to bring them under the act. The theory of danger in the proximity of the required number of workers working on the same premises is no longer adhered to in Missouri or elsewhere to any substantial extent since most of the acts require the counting of employees of the same employer, though all of them may be working separately in different states. The Supreme Court of Missouri follows the general rule, which it stated as follows in the Pruitt v. Harker case, discussed next above: 'This act should be liberally construed as to persons to be benefited. And a doubt as to the right to compensation is to be resolved in favor of the employee.'

"In other words, commissions and courts generally will resolve in their favor reasonable doubts as to jurisdiction to the end that the compensation law may be given a liberal construction in the matter of including all those for whose benefit it was intended.".

But, even if we count as employees of Grace the employees of subcontractors who performed work for Grace on other jobs, the record as here presented fails to show that Grace had over ten employees either on the date of the accident or at any time. The evidence with respect to this phase of the case is very indefinite, when it could have been made reasonably certain. Most of the evidence merely tends to show that Grace did work at other places at some time prior to entering into the work at the Kensington Avenue premises, and had working on said jobs employees of subcontractors. Definite dates as to when the work was done are not shown. Nor is it shown that the work on the various jobs was done concurrently, or that on any particular occasion a sufficient number were working so as to make respondent a major employer. Those subcontractors whose employees appellant contends should be counted as employees of Grace are as follows: Jesse Allison, Allen Johnson, Gustave Ernst, Charles Gerhardt, and Frank Ross.

Allison testified:

"I had four men working for me on October 6, 1937, but only three of these, Richard Smith, John Jordan and William Jordan were sent to Kensington Avenue.

"I worked for Mr. Grace at 5825 Maple Avenue doing sheet metal work, but only two of my employees were working down there. I started doing work for the Grace Contracting Company about June,

and have done quite a bit of work for him and have also done work for others during that time. I have probably done about fifteen jobs for Grace during that time. Among them were 4700 South Broadway, the one on 5824 Maple Avenue and 4000 block on Labadie.

"On this day I had my men working on Carter Avenue, and had an agreement with the owner of the building, and Grace had nothing to do with that.

"I had a subcontract to do sheet metal work for Robert Grace at 1425 Belt Avenue. I put guttering around the back porch there and flashed the wall. I had two employees doing that work. I had a subcontract with Mr. Robert Grace to do sheet metal work at 5824 Maple Avenue. I repaired the roof there and had two men employed there to do the work. They were both regular employees. I did sheet metal work under contract with Grace at 4162 Castleman Avenue. There I flashed a chimney and I had one employee there to do the work. At 5627 Chamberlain Avenue I had one of my regular men fix a porch there under contract with Mr. Grace. At 6505 Deville Avenue, St. Louis County, I had one man employed to flash across the front window. At 4235 St. Louis Avenue I put in two furnaces under contract with Mr. Grace. I used two men to do the work, which was done in October, prior to October 6th. The men were Richard Smith and Jewel Maury. After Smith was hurt the job was not completed and I finished it myself."

It will be observed that Allison testified he had only four employees, three of whom did work at 5041-43 Kensington. We have counted these three as being employees of Grace on October 6th. The other employee, Jewell Maury, did work at 4235 St. Louis Avenue prior to October 6th, the exact date of which is not shown.

Frank Ross was a subcontractor, who did carpenter work. He had one helper. He testified that he repaired screens at 1425 Belt Avenue, but could not remember the date, nor did he remember whether his helper assisted him. He also did work at 3452 Halliday, with a helper named F. L. Korn, the date of which work is not shown. He further testified that he also did work for Grace at 5627 Chamberlain, 905 Lawton, 4169 Delmar, and 5920 Plymouth. At this last address, Korn helped him. Ross did not give the dates when the above work was performed.

With reference to Allen Johnson, the record shows that he was a painting contractor, who had two brothers and a boy working for him; that sometime during the weeks ending September 18th, September 25th, and October 2nd, he did work for Grace on other jobs. He had two employees working on the Grace job which he did during the week ending October 2nd. All of the foregoing work was performed prior to the time that Grace started work on the Kensington

Avenue premises. It is not shown that at the time Johnson's men were working on the Grace job that other employees of subcontractors were working on other Grace jobs, which employees, when counted with Grace's employees, would make the latter a major employer.

Appellant also says that the employees of Gustave Ernst should be counted. The record shows that Ernst had a contract to do the carpenter work, and that he had a helper who worked with him two or three days at 5041 Kensington Avenue, about two or three weeks after claimant was injured. Clearly this employee should not be counted as an employee of Grace on October 6, 1937.

Appellant contends that his Exhibit 3, when properly considered, shows that respondent was a major employer. That exhibit consisted of the entries in respondent's cash disbursement book, and showed payments made during the months of September and October, 1937, to various persons, in varying amounts, most of the items being charged to "contract labor." Respondent's evidence was that these entries were in payment of labor by subcontractors or their employees. Appellant contends that the persons to whom these amounts were paid should be considered as employees of Grace.

There was no dispute over the fact that all the persons listed in the exhibit did in fact perform work in connection with the various contracts which Grace had with the Home Owners' Loan Corporation. Some of the payments shown by this exhibit were made to subcontractors, who, of course, under no theory of the case could be counted as employees. Other payments were made to persons who presumably were employees of subcontractors. As to these persons, it is not shown when the work was performed. Nor is there any showing that such work was performed on the premises where Grace was carrying out his work under his various contracts with the Home Owners' Loan Corporation, which showing, of course, would be necessary before such persons could be counted as employees of Grace under Section 3308 (c), Revised Statutes Missouri 1929, now Section 3698 (c), Revised Statutes Missouri 1939. [Stockton v. Anderson Motor Serv. Co., 230 Mo. App. 211, 89 S. W. (2d) 573; Rutherford v. Tobin Quarries, 336 Mo. 1171, 82 S. W. (2d) 918.] To say that Exhibit 3 makes out a case, we would have to assume, without evidence to support it, that enough of these people worked at one time, on premises which Grace controlled for the purpose of making repairs under his contract with the Home Owner's Loan Corporation, to make respondent a major employer. We are unwilling to do this for the contrary inference is just as reasonable.

Appellant further insists that the record herein contains evidence of an admission of liability by respondent Grace, which would support the commission's finding that Grace was a major employer. We will, therefore, set out this testimony.

Jesse Allison testified:

"On the day Mr. Smith was injured, I had a conversation with Mr. Grace in front of the Kensington Avenue building, in which I told him one of the boys got hurt and had to go to the hospital. He said for me to take care of all this, that he was working for me—not for him. He told me to take the man off the job. I did. I wrote a letter to the Home Owners' Loan Corporation, telling them that the boy, Richard Smith, was hurt at the address in question, and was in the DePaul Hospital in a serious condition, and I said that the Grace Contracting Company 'was the general contractor.' Mr. Grace told me I ought not to have written the letter, and told me that I put him 'in a fix,' although I don't know whether he said it just that way or not.

·  ·  ·  ·  ·  ·  ·

"On the Monday following the accident I met Mr. Grace at the Mound City Plumbing Company and had a conversation with him. He told me to take the man off the job. He also said it would be best if I would pay the hospital and doctor bills, if I could afford it; that it would be better for me. He said to make some kind of settlement with the hospital and to pay it as I could, and that he thought they would be satisfied. I don't know his exact words.

·  ·  ·  ·  ·  ·  ·

"I saw him (referring to Mr. Grace) Monday, following the accident at the Mound City Plumbing Company. He said I had better offer to pay the hospital and doctor bills. If I didn't have the money I could give him a couple of dollars a week. He said that if I did that, we will have no more trouble. He said that if I did that, he would give me enough work to keep me busy all winter."

Grace testified:

"Q. You knew he was injured? A. I knew he was injured but I knew he was working for Mr. Allison at the time. I said to Allison, 'You had better go take care of the man.'"

Smith testified:

"They knew I was injured. Mr. Allison said I ought to have it attended to and Mr. Grace said I had to have it attended to right away."

We fail to see in this testimony any admission of liability on the part of Grace. In fact, the testimony shows that Grace, when talking to Allison, expressly denied any responsibility in the matter, and stated that claimant was not working for him, but for Allison, and protested against the letter to the Home Owners' Loan, which mentioned him as the general contractor. The evidence further shows that Grace advised Allison to pay the claimant's hospital bill, but nowhere is it intimated that Grace considered himself liable for it. It appears to be merely a piece of gratuitous advice on his part, as was his advice to claimant that he should have his injury attended to right away. This is the only reasonable inference that can be drawn

from the testimony. Nowhere in the record have we found any admission of liability by Grace.

The foregoing evidence falls far short of sustaining appellant's contention that Grace was a major employer within the Act. Plaintiff's counsel has not, either in his brief or at the oral argument, pointed out any evidence in the record which shows that, on October 6, 1937, or on any occasion prior thereto, over ten such employees of Grace, or any of his subcontractors, were engaged concurrently in work on premises where Grace had a contract for repair work, and we have searched the record, but have failed to find any such evidence. We cannot assume that all these jobs were going on at the same time. Such a finding would be based on pure speculation.

The appellant makes the further contention that since the evidence showed that Grace had about fifty contracts with the Home Owners' Loan Corporation, during the year 1937, to do work similar to the work being performed at the Kensington Avenue property, it would have been impossible for him to have performed said contracts and still to have remained a minor employer, and that this evidence was sufficient to support the award. This is pure speculation. The burden of proof was upon the claimant to bring the employer within the Act as a major employer. [Kemper v. Gluck, 327 Mo. 733, 39 S. W. (2d) 330; State ex rel. Ebert v. Trimble, 333 Mo. 711, 63 S. W. (2d) 83.] This burden must be met by substantial evidence. A finding of the commission must not rest on speculation and conjecture.

After an examination of the whole record in this case, we are of the opinion that there was not sufficient evidence in the record to sustain the finding of the commission that respondent was a major employer subject to the Workmen's Compensation Act.

However, the record discloses that at the hearing before the Referee appellant was not permitted to fully develop the evidence in support of the theory that respondent was a major employer when all employees of subcontractors doing work on appellant's premises were counted. At said hearing appellant had placed on the stand one Charles A. Gerhardt, who testified that he was engaged in business as a hardwood floor contractor. He further testified that between September 13th and 18th, he had a contract with Grace for work at 6114 Crescent Avenue. When appellant's counsel asked him to state how many employees worked on this job, an objection was sustained to the question, and appellant thereupon made an offer of proof that the testimony requested would show that three employees worked on this job. The witness testified that on or about September 22nd, he had a floor finishing contract with Grace at 3542 Halliday Avenue, and when asked to give the number of employees who worked on that job, an objection was made and sustained, and appellant's attorney then made an offer of proof that the testimony of the wit-

ness would prove that five men were employed on that job. The witness then testified that at about the same time, during September, he had a contract for the same kind of work for Mr. Grace at 1425 Belle Avenue, and when asked the number of employees used on that job, the referee again sustained respondent's objection, and appellant's counsel then made an offer of proof that the evidence would show that three men were employed on that job. Witness further testified that about October 4th he had a contract with Mr. Grace to do work at 5627 Chamberlain, and when asked to state the number of men employed there, the referee again sustained respondent's objection to the question, and an offer of proof was made that the testimony would show that he had two men employed on that job.

The foregoing evidence was improperly excluded. For that reason, and for the further reason that the evidence which was admitted, bearing upon the principal issue, was not fully developed at the trial before the referee, the cause should be remanded to the Commission for a new hearing.

The judgment is reversed and the cause remanded with directions to the trial court to reverse the award of the Commission and remand the cause to it for further action. *Hughes, P. J.,* and *McCullen, J.,* concur.