ALLEN, Chief Judge.
Petitioners were a subcontractor and his insurance carrier in a workmen’s compensation proceeding below. They seek review of an order of the full commission holding the subcontractor, Collins, solely liable for the benefits awarded to the injured workman.
The deputy commissioner made a finding that the Fidelity Construction Company, as a general contractor, subcontracted a part of its contract with Arthur J. Collins, the petitioner herein; that Collins’ business was masonry work which consisted of block and concrete work, except outside plastering; that Collins was a somewhat large *741 masonry contractor, having many job sites to serve; that he had in the past engaged in performing masonry work for Fidelity; that Fidelity requested Collins to accelerate the work; that as a result of certain con^ ferences between Collins and an agent of Fidelity, one Humphries was employed to do the necessary block work and Humphries did furnish the labor and equipment and would be paid on the same basis as the Collins-Fidelity arrangement; that neither Collins nor Fidelity supervised or hired any employees of Humphries; that Humphries hired one Charles Knight, the claimant herein, who was injured on the job; and that Humphries did not secure any payment of compensation.
The deputy commissioner further determined that Fidelity and Collins were equally responsible for the benefits due to the injured employee under the Workmen’s Compensation Act.
Upon review, the full commission vacated that portion of the deputy commis-’ sioner’s order dividing the responsibilities equally, and remanded the cause to the deputy commissioner with directions to find Arthur J. Collins and Son, Inc., solely liable to the claimant for payment of workmen’s compensation benefits.
The petitioner states the following question :
“Whether the responsibility for providing or securing the payment of workmen’s compensation benefits to an employee of an uninsured sub-subcontractor devolves entirely upon the general contractor at the top of the contractual pyramid or whether it devolves entirely upon the insured intervening subcontractor.”
Section 440.10(1), Florida Statutes, 1957, F.S.A., provides:
“Every employer coming within the provisions of this chapter, including any brought within the chapter by waiver of exclusion or of exemption, shall be liable for and shall secure the payment to his employees of the compensation payable under §§ 440.13, 440.-15 and 440.16. In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for and shall secure the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.”
We are of the opinion that testimony before the deputy commissioner showed that Humphries was not an employee of Collins or Fidelity but shows rather him to be a subcontractor of Collins, and as such there w;as no duty on the part of Collins to protect Humphries or Humphries’ employees by insurance. If, in fact, as we determine herein, that Humphries was a subcontractor of a subcontractor, then the duty devolved on the contractor Fidelity Construction Company to secure the employee Knight by workmen’s compensation insurance or be liable primarily for such claims.
Both petitioners and respondents state that this is a question of first impression in Florida. Our research fails to find a Florida decision on point. However, the District Court of Appeal, First District, in the case of Lindsey v. Willis, Fla.App.1958, 101 So.2d 422, 427, in a case in which it held that Lindsey was the claimant’s employer and liable for his injuries, said:
“Having so held, it becomes unnecessary to discuss petitioner’s contentions concerning the constitutionality of F. S. Sec. 440.10(1), F.S.A., as applied by the Full Commission. We wish to point out, however, that had the facts supported the existence of a contract between Buckeye and Lindsey, and had Presley and/or Norris been found to occupy the position of sub-contractors, *742 then Lindsey would be properly accountable as claimant's statutory employer. This is so far the reason that Lindsey would then be the prime contractor or common employer with the primary obligation to Buckeye; and employees of those to whom Lindsey ‘sublet’ should fall within the class contemplated by F.S. Sec. 440.10(1), F.S. A.”
It is manifest that the purpose of Section 440.10(1) is to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the general contractor who has it within his power to insist upon adequate compensation protection for employees of his subcontractors. The Supreme Court of Florida in Younger v. Giller Contracting Co., 143 Fla. 335, 196 So. 690, held that Florida Statutes, Section 440.10(1), F.S.A., imposes a statutory liability on the general contractor where the subcontractor has failed to secure adequate compensation coverage and that the general contractor is the statutory employer of all employees engaged. The Younger case was cited in Brickley v. Gulf Coast Construction Co., 153 Fla. 216, 14 So.2d 265, 266, by the Supreme Court in stating:
“We think that the applicable provisions of the Florida Workmen’s Compensation Law make it entirely clear that all workmen engaged in the same contract work are deemed to be employed in one and the same business or establishment, and, without regard to whether they are employed by the general contractor, or by a sub-contractor under him, are to be considered for compensation purposes as the employees of the general contractor. * * * ”
It was contended in Miami Roofing & Sheet Metal Co. v. Kindt, Fla. 1950, 48 So. 2d 840, 843, by claimant, an employee of a subcontractor, who had been injured by an employee of another subcontractor, that an action could be maintained for damages against the subcontractor since there was evidence that the subcontract under which claimant’s employer was working gave such employer the status of “independent contractor,” and therefore this fact changes the rule in the Younger and Brickley cases. The Court, speaking through Justice Roberts, held that this contention could not be sustained, and in reference to Section 440.-10, Florida Statutes, F.S.A., stated:
“ * * * It will be noted that it is not specifically provided that the liability of the contractor shall exist whether or not the subcontractor has the status of ‘independent contractor.’ But we think it is fair to assume that such was the legislative intent, as any other interpretation would result in inequalities among the workmen on the same job, all of whom are, in fact, engaged in fulfilling the general contractor’s contract work, even though some of the workmen are responsible, insofar as the method of accomplishing the work is concerned, only to their own immediate employer. The interpretation contended for by plaintiff would also enable a general contractor to escape liability under the Act by doing through independent contractors what it would otherwise do through direct employees. See Smith v. Grace, 237 Mo.App. 91, 159 S.W.2d 383, 389; Madison Entertainment Corp. v. Kleinheinz, 211 Wis. 459, 248 N.W. 415.”
In our research we found that a very similar issue was presented to the Supreme Court of Pennsylvania in Qualp v. James Stewart Co., Inc., 266 Fa. 502, 109 A. 780. In the Qualp case, the general contractor employed a subcontractor, who in turn employed a second subcontractor. An employee of the second subcontractor died as the result of injuries sustained in the course of his employment and his dependents claimed compensation from the general contractor. In analyzing the employment structure along with the duties and liabilities attendant thereto, the Court stated at page 781 of 109 A.:
*743 “The claimant, a laborer on the premises under the employer’s control, was engaged by a contractor to do a part of the work undertaken by the original contractor. This work was a part of the employer’s regular business, made so by his contract with the owner.
“The work so performed .by the laborer was intrusted by the original contractor to a contractor ordinarily known as a subcontractor, who, by the terms of the act, is included in the designation ‘contractor.’ He is a subcontractor because his contract is subordinate to and under the principal contract, though in the business world he may be independent; but as regards this transaction his contract is a dependent one, wherein he agrees to do all or a part of that which another has agreed to do. This subcontractor in turn ‘intrusted’ the same work to another ‘contractor’ (a second subcontractor) who employed claimant. The essential consideration is that the work of the original contractor, to be performed under his contract, was intrusted to a contractor (a subcontractor being under this designation) to be carried out as part of the original contractor’s regular business. The act did not intend to limit the ‘hiring a laborer’ to a ‘contractor’ standing in immediate contractual relation with the employer (original contractor); it intended to include these laborers or employés who did work in furtherance of the employer’s business, who were employed by any one having a lawful right or duty to engage in the business undertaken by the employer. * * *
“The power was placed in the employer’s subcontractor to make a further subcontract, and thus further intrusted the performance, on the premises, of a part of the employer’s regular business that had been intrusted by the employer to that subcontractor. The employer, through his failure to take advantage of the exemption al-
lowed by the act, made it possible to create the condition which actually followed. Unless the precaution provided by law was taken, employés of the second subcontractor would stand in the same relation to the original contractor as employés of the first subcontractor. The employer could have prevented this by posting notices or by providing for compensation liability in his subcontract, in the event of a secondary subcontract. Without the employer’s knowledge and because of his failure to protect himself, a second contract was made which, by the clear intendment of the act, brought the employés of the second subcontractor under or within the compensation liability of the original contractor. The reason for the rule is plain. The Legislature wanted to definitely fix some responsible party with the obligation of paying compensation to injured workmen, and the party selected was the first whose duty it was to assume control of the work. It selected the first in succession from the owner, believing the owner would contract with none but responsible persons. He was the first in the field and in the contracting scheme of work, the head of the endeavor, the person to whom an employé would naturally look. This liability may be avoided, but it must be done in the way pointed out by the act, and of this the employé must have notice. No unfair dealing can thus arise. The act intended to throw the burden on the man who secured the original contract from the owner to the end that employés of any degree doing work thereunder might always be protected in compensation claims.”
From a review of the legislative intent and policy as interpreted by the Florida cases cited herein, and for reasons illustrated in the quote from the Qualp case, it is the order of this court that the writ issue and the order of the full commission be quashed. The cause is remanded *744 for the entry of an order reinstating and modifying the order of the deputy commissioner to the extent necessary to render it in accordance with the views herein expressed which, in effect, is to make Fidelity Construction Company and its carrier, Southern Indemnity Company, respondents herein, liable for the compensation benefits due the claimant.
KANNER, J., and MORROW, R. O., Associate Judge, concur.