ALFONS HIESTAND, APPELLEE, V. RUDOLPH A. RISTAU ET AL., APPELLANTS.

284 N. W. 756

FILED MARCH 10, 1939. No. 30571.

*Brown, Fitch & West* and *Robins & Yost,* for appellants.

*John P. Corbett, Harold M. Shultz* and *Cook & Cook, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

ROSE, J.

This is a proceeding under the workmen's compensation law. Comp. St. 1929, secs. 48-101 to 48-161. While Alfons Hiestand, a carpenter, was engaged in shingling a barn, the scaffolding which had protected him on the roof gave way and he fell to the ground, November 20, 1936, a distance of 14 feet, and broke the os calcis of his left foot. Pleading that the accident and resulting injury arose out of and in the course of his employment, he presented to the compensation court a claim for compensation, joining as defendants Rudolph A. Ristau and the Equitable Life Assurance Society, a corporation owning the farm in Dodge county on which the barn was located. Ristau was the contractor employed by the insurance corporation to furnish the materials and labor and to repair the barn.

In the petition for compensation, it was alleged in substance that the wages of plaintiff were $19.20 a week; that he was totally disabled for three months; that the permanent partial loss of the use of his left foot was 50 per cent.; that the insurance corporation is liable for compensation for failure to require the contractor to carry compensation insurance for the benefit of his employees; that defendants adopted a scheme, artifice or device to have the barn repaired without liability to workmen for compensable injuries.

The compensation court adjudged awards, based on employee's weekly wages of $19.20, in favor of plaintiff and against both defendants, as follows: Total temporary disability of employee from November 20, 1936, to April 16, 1937, 21 weeks, at $12.80 a week; compensation for a 20 per cent. permanent partial disability in the loss of the use of employee's left foot, $12.80 a week for 30 weeks from April 16, 1937. The same awards were made upon appeal by defendants to the district court for Dodge county, where attorney fees of $137.50 were taxed against defend-

ants in favor of plaintiff as costs. From the judgment of the district court defendants appealed to the supreme court.

The Equitable Life Assurance Society, defendant, called "corporation" for brevity, takes the position that it is not liable to plaintiff for compensation, because it required its contractor, Ristau, to procure compensation insurance for his employees pursuant to the workmen's compensation law, which provides:

"Any person, firm or corporation creating or carrying into operation any scheme, artifice or device to enable him, them or it to execute work without being responsible to the workmen for the provisions of this article, shall be included in the term 'employer' and with the immediate employer shall be jointly and severally liable to pay the compensation herein provided for and be subject to all the provisions of this article. This section, however, shall not be so construed as to cover or mean an owner who lets a contract to a contractor in good faith, or a contractor who, in good faith, lets to a subcontractor a portion of his contract, if the owner or principal contractor, as the case may be, requires the contractor or subcontractor, respectively, to procure a policy or policies of insurance from an insurance company licensed to make such insurance in this state, which policy or policies of insurance shall guarantee payment of compensation according to this article to injured workmen." Comp. St. 1929, sec. 48-116.

The corporation conducts a life insurance business under a charter from the state of New York and has authority to transact business in Nebraska and to invest insurance funds in mortgages on Nebraska lands and to take and hold for five years title to such lands in payment of loans of insurance funds. It temporarily owns in this state 20 farms thus acquired, among them the farm on which plaintiff was injured as the result of falling from the roof of the barn. The evidence upon which the corporation relies to prove that it required its contractor to procure compensation insurance is found in a common form of contract between owner and contractor and providing:

"Contractor shall maintain, in connection with this work, insurance as will protect him from claims under workmen's compensation act of the particular state in which he is operating and from any other claims under personal injuries or otherwise which may arise from this work; contractor shall save the owner harmless and indemnify him from every expense, liability or payment, by reason of any injury to person or persons, or damage to property resulting from an action or operation under this order."

The contractor did not perform the agreement to procure compensation insurance and said he was without means to do so. Did the corporation "require" such protection for employees by the mere unperformed agreement to procure this insurance? The answer depends on what the lawmakers meant and expressed by the use of the word "requires," as it appears in the workmen's compensation law. Compliance with that requirement was a condition of immunity from liability for workmen's compensation. The letting of a contract to a contractor who could not and did not procure such insurance did not accomplish the legislative purpose or comply with the condition for immunity or protect workmen by insurance. The lawmakers intended the requirement to be effective and necessarily used the word "requires" with that end in view. An unperformed agreement for compensation insurance is not the requirement of it within the meaning of the provision quoted from the workmen's compensation law. "Requires," in the sense therein used, means "compel" or "exact," adjudicated definitions. *Kennedy v. Falde,* 4 Dak. 319, 29 N. W. 667; *Meagher v. Van Zandt,* 18 Nev. 230, 2 Pac. 57; *State v. McCord,* 8 Kan. 232; *Vogrin v. American Steel & Wire Co.,* 263 Ill. 474, 105 N. E. 332; *Butler Street Foundry & Iron Co. v. Industrial Board,* 277 Ill. 70, 115 N. E. 122. The contractor did not procure compensation insurance nor pay compensation. The "good faith" of the corporation, therefore, in inserting in its contract with the contractor his futile promise to procure compensation did not amount to a requirement therefor within the meaning of the statute

nor comply with the statutory condition for immunity for compensable injuries to the workmen.

The statutory terms "any scheme, artifice or device" creating a joint and several liability of owner and contractor for compensable injuries to workmen, do not necessarily imply active fraud or evil design. *Sherlock v. Sherlock*, 112 Neb. 797, 201 N. W. 645. The making of the contract obligating the contractor to procure compensation insurance, the failure of obligee to exact performance of that duty, and the action of the contractor in making the repairs without procuring the insurance, amounted to a "scheme, artifice or device" which made both owner of the barn and the contractor liable for compensable injuries of workmen. Comp. St. 1929, sec. 48-116; *Sherlock v. Sherlock*, 112 Neb. 797, 201 N. W. 645.

To reverse the allowances for compensation both defendants invoke the statutory provision that the word "employee" shall not be construed to include "any person whose employment is casual, and which is not in the usual course of the trade, business, profession or occupation of his employer." Comp. St. 1929, sec. 48-115. This means conjunctively both "casual employment" and "usual course of trade, business, profession or occupation." *Sherlock v. Sherlock*, 112 Neb. 797, 201 N. W. 645; *Guse v. Wessels*, 132 Neb. 41, 270 N. W. 665. It is argued by defendants that plaintiff's employment was casual within the meaning of both provisions creating immunity from liability for compensation. The preponderance of the evidence, including the surrounding circumstances, is to the contrary. Plaintiff was a carpenter by trade and was employed by the contractor as such. He was not employed for a single job and reemployed for each of a series of jobs. He testified he started to work for Ristau March 5, 1936, and worked for him until November 20, 1936, the date of his injury; that his employment was continuous; that he was told in advance the work of his employment would last six to eight weeks; that he worked as carpenter for his employer on different contracts, describing them; that Ristau and others

were at work on the same roof at the time of the accident. It was stipulated that plaintiff's compensation was 40 cents an hour, or $12.80 a week for compensable injuries, if any. The statute defines "casual" as used by the lawmakers in reference to compensation, as follows:

"The term 'casual' shall be construed to mean 'occasional; coming at certain times without regularity, in distinction from stated or regular.'" Comp. St. 1929, sec. 48-115; *Bridger v. Lincoln Feed & Fuel Co.*, 105 Neb. 222, 179 N. W. 1020.

Under this definition, the better view of the evidence is that the employment of plaintiff in the case at bar was not casual. Nor was the injury noncompensable as resulting from farm labor. *Guse v. Wessels,* 132 Neb. 41, 270 N. W. 665.

Was the employment of plaintiff within the "usual course of the trade, business, profession or occupation" of the corporation? It was employer of the contractor and was engaged in the life insurance business. In the course thereof it legally invested insurance funds, made loans and secured them by mortgages on farms. For the payment of loans it lawfully took title to land mortgaged in its business and may hold the title for five years for the purposes of sale and conservation of insurance property to meet maturing insurance obligations. The repairing of buildings on such farms to make them salable and rentable for insurance revenue is in the usual course of the insurance business of the insurance corporation. It seems clear from the statute and the evidence that this defense is unavailing.

It is further insisted that the employment was seasonal and that consequently compensation was erroneously allowed under the workmen's compensation law. Comp. St. 1929, sec. 48-126. The law is that " 'Seasonal employment' refers to occupations which can be carried on only at certain seasons or fairly definite portions of the year, and does not include such occupations as may be carried on through the entire year." *Hogsett v. Cinek Coal & Feed Co.*, 127 Neb. 393, 255 N. W. 546. See *Gorham v. Kiewit*

*Sons Co.,* 129 Neb. 277, 261 N. W. 353; *Lincoln Gas & Electric Light Co. v. Watkins,* 113 Neb. 619, 204 N. W. 391. The true import of the evidence is that the trade or occupation of a carpenter may be pursued throughout the year. It follows that it is not seasonal as a defense to workmen's compensation.

Compensation for a 20 per cent. permanent partial disability for the loss of the use of employee's left foot is challenged by defendants as excessive. That there was a permanent partial disability in the use of the ankle is clearly shown, but experts were not in accord on the exact percentage of loss. A physician who made an examination June 4, 1937, found a disability of 25 per cent., with the prognosis there will be "marked improvement." The same physician said later that there was still a 25 per cent. disability in ladder climbing. There is also testimony that the medical advisory board of the compensation court in June, 1937, after an examination and the aid of X-rays showing a fracture of the os calcis with position and alignment normal and slight limitation of motion, found a 20 per cent. disability. One expert testified to the opinion there was no permanent disability, but, on the entire record, defendants insist there is no evidence to sustain a permanent partial disability exceeding 10 per cent. The estimates limited to that loss, however, seem to disregard to some extent the 25 per cent. disability in ladder climbing, an essential activity of a carpenter. Defendants' view of the evidence seems to overlook plaintiff's own evidence of disabling pain and also weakness from continuous use of the left foot. The compensation court and the district court found the permanent partial disability to be 20 per cent. and that estimate is adopted as the proper finding under the evidence.

In addition to compensation, plaintiff seeks penalties for "waiting time" under the workmen's compensation law. Comp. St. 1929, sec. 48-125. There was a reasonable controversy over the liability of defendants for compensation and the claim for penalties was properly disallowed by the

district court. *Updike Grain Co. v. Swanson,* 104 Neb. 661, 178 N. W. 618.

On a review of the whole case, error prejudicial to defendants has not been found. Attorney fees of $100 in favor of plaintiff for services of counsel in the supreme court will be taxed against defendants as costs.

AFFIRMED.