Elmo BLEW, Appellant,

v.

Albert F. CONNER and Mary W. Conner,
and Hartford Accident & Indemnity
Company, Respondents.

No. 22688.

Kansas City Court of Appeals.

Missouri.

Feb. 3, 1958.

Hess & Collins, Macon, for appellant.

John S. Marsalek, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for Hartford Accident and Indemnity Co.

James Glenn, Macon, for respondents.

HUNTER, Judge.

Elmo Blew, appellant, was awarded $2,575.39 by the referee in a workmen's compensation hearing in which Albert F. Conner and Mary W. Conner, and Hartford Accident & Indemnity Company, respondents herein, were named as employers and insurer respectively. The award was approved by the Industrial Commission. The circuit court reversed the Industrial Commission and found for the named employers and insurer. Hence this appeal.

The facts are relatively uncontroverted. Albert F. Conner and Mary W. Conner own a farm in Macon County, Missouri. In July, 1953, the barn on that farm burned down. They purchased a barn from a neighbor, Bud Reed. They employed some men to dismantle that barn, located about two miles north of their farm, and to move it and reassemble it on their farm. Among these men was appellant, Elmo Blew, who was to do carpentry work in connection with the dismantling and reassembling of the purchased barn. During the reassembling of the barn on the Conners' farm, Blew who had been working with a saw, hammer and such, was pulling a nail out of the end of an oak post with a crowbar,

so the end of the post would sit on the sill. The nail suddenly came out of the post and crowbar and flew up into Blew's left eye, putting it out. While hospitalized for treatment his eyeball was surgically removed. It is admitted that Blew was an employee of the Conners and that his injury was an accident arising out of and in the course of his employment by them. It is conceded by respondents that if there is liability the amount awarded is the correct amount. It is agreed by all parties that the Conners had never filed any written acceptance of the Missouri Workmen's Compensation Law. Respondents deny any liability under that law.

Respondents' principal contention is that the Conners did not have the requisite minimum number of employees regularly and concurrently employed to cause them to be deemed to be a major employer within the meaning of the Workmen's Compensation Law, and thus liable under the act in the absence of specific election to come under its terms. They also contend Blew was engaged in farm labor at the time of the accident and, therefore, was not under the compensation law. Respondent Insurance Company denies its policies covered the liability in question. The Conners and Blew join hands against this latter contention. We will go into the facts more fully in connection with our discussion of those contentions.

There are several general rules that apply which we wish to acknowledge. The long-established rule is that the burden of proof is on the party claiming the applicability of the act to bring himself under it. If he bases his cause of action upon the act he must prove that he is within its terms. Hogue v. Wurdack, Mo.App., 298 S.W.2d 492, 499.

Our state constitution requires the findings of the Industrial Commission to be supported by "competent and substantial evidence upon the whole record." V.A.M.S.Const., Article V, Sec. 22. On review of questions of fact decided by the

Industrial Commission, our inquiry, as is that of the circuit court, is limited to whether or not the findings of the Commission are supported by competent and substantial evidence upon the whole record. As stated by our Supreme Court, en Banc, in Kansas City v. Rooney, 363 Mo. 902, 254 S.W.2d 626, loc. cit. 628: "This 'does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence.'"

■ As to construing the provisions of the act itself the required approach was stated in Dost v. Pevely Dairy Co., Mo. Sup., 273 S.W.2d 242, 244, by Judge Hyde, who speaking for the Supreme Court, said: "Sec. 287.800 states that the provisions of the Workmen's Compensation Act shall be liberally construed with a view to the public welfare. This has been interpreted to mean that the Act should be construed 'with a liberality calculated to effectuate its purpose and so as to extend its benefits to the largest possible class and restrict those excluded to the smallest possible class.' Hilse v. Cameron, Joyce Construction Co., Mo.App., 194 S.W.2d 760, 765; Sayles v. Kansas City Structural Steel Co., 344 Mo. 756, 128 S.W.2d 1046."

■■ The Industrial Commission found that the Conners were major employers, and that they had more than ten employees in the State of Illinois and more than one employee in Missouri. We proceed to examine the record to ascertain if it contains competent and substantial evidence that the Conners were major employers on the day of the accident or on some day prior thereto, for, if they once reached the status of a major employer their election or presumed election under the act to accept its provisions continues in the absence of written rejection, even though the number of employees may change intermittently. Barlow v. Shawnee Inv. Co., 229 Mo.App. 51, 48 S.W.2d 35; Smith v. Grace, 237 Mo. App. 91, 97, 159 S.W.2d 383, 386. It is settled that the required minimum number, "more than ten" means that the given number were all working at a particular time, and not merely that more than ten were working at different times and not concurrently. Smith v. Grace, supra.

■ According to the record, Mr. and Mrs. Conner jointly owned the Missouri farm where the accident occurred and they were the joint employers of those who worked there. The record also contains competent and substantial evidence to the effect that the two of them also owned and operated a tavern business in Peoria, Illinois, and that Mr. Conner was a partner with two other men in an electrical business in Illinois. With regard to the Missouri farm, the uncontroverted testimony of Mr. Conner disclosed that the Conners employed a farm manager, Mr. Clavin, and also, "five or six" men who were engaged in the barn moving operation. It also disclosed that there were five men ("four bartenders and a porter") regularly employed at the tavern in Peoria, Illinois. Considering that this testimony came from Mr. Conner, who was contending that he did not employ more than ten regular employees within the meaning of the Missouri Compensation Law, and the other circumstances surrounding this testimony, we hold that this testimony is sufficient to be the basis of a finding that six and not five were employed by the Conners in the barn moving operation and that they also employed five at their tavern, making a total of eleven employees, the minimum number required by the act to constitute the Conners major employers, if all the other applicable requirements of the act were met.

Respondents strongly urge that certain other requirements of the act have not been met. They say there is no evidence to support a finding by the Commission that these employees were concurrently

employed on or before the day of the accident.

Turning again to the record, we note the following uncontroverted and pertinent testimony of Mr. Conner:

"Q. How many regular employees do you have in the State of Illinois? A. Four bartenders and a porter.

"Q. Did you have these four bartenders and the porter as regular employees on *August 5, 1953*? A. I would have to check the records on that to see. *Normally I would have,* I wouldn't say at that particular time I did or didn't I would have to check and see."

Mr. Conner then testified that he was interested as a partner in an additional and separate business in Illinois, an electric shop located in Peoria. He was asked,

"Q. And were there about four or five regular employees employed there at that electric shop on August 5, 1953? A. Yes, sir.

"Q. So that as I understand it, it is a fact, that counting the employees at the electric shop and the employees at the tavern, that on *August 5, 1953,* you did have ten regular employees in the State of Illinois? A. Yes, but there is a difference in the two places.

"Q. I know, they are not the same business, they are two different businesses. A. Yes, one I own outright and one in partnership."

With reference to the number of employees he had in Missouri, he testified that he had one regular employee, Mr. Clavin, who ran the farm for him, including August, 1953. He was asked,

"Q. Do you know how many men Mr. Clavin had employed for you to help tear down this barn and move it on to your farm? A. I do from paying them, yes.

"Q. How many? A. Five or six, altogether.

"Q. And that was in August—August 5, 1953, is that correct? A. Yes, sir. * * *

"Q. Could you tell me how long a period these men worked last year on this barn business? A. I would say someplace in the neighborhood of thirty days, maybe a little longer, maybe a little less, I don't actually know.

"Q. Had any of these men worked for you before? A. Yes, sir."

■ We think this evidence is sufficient to support a finding by the Commission that these employees were concurrently employed by the Conners on August 5, 1953, when the accident occurred.

Respondents next say that claimant Blew and the others who worked on the barn moving project were engaged in farm labor at the time of the accident and thus claimant was not within the coverage provided by the act. Section 287.090(2) exempts *"Employments of farm labor and domestic servants including family chauffeurs"*. (Italics ours.) If, as respondents contend, claimant was engaged in an employment of farm labor at the time he was injured, he is not within the coverage of the act. Nor if the others engaged in the barn moving operation were engaged in an employment of farm labor can they be counted in determining if the required minimum number "more than ten" were employed to constitute the Conners' major employees under the act. Barlow v. Shawnee Inv. Co., supra; I Larson, Workmen's Compensation Law, Sec. 52.31; Plemmons v. Pevely Dairy Co., Mo.App., 233 S.W.2d 426; Davis v. McKinney, Mo.App., 303 S. W.2d 189.

■ In using the term "farm labor" our legislature intended that it have its ordinary and customary meaning, and did not intend to exclude from the benefits of the Workmen's Compensation Act all of those who could be included in the broadest scope of the term agriculture. Dost v. Pevely Dairy Co., supra, 273 S.W.

2d loc.cit. 243. As a result of numerous decisions by the appellate courts of this state and elsewhere, the rule is well established that the character of employment of an employee must be determined from the whole character of his employment and not by the particular work he is performing at the time of his injury, nor by the place where such work is performed, nor by the nature and scope of his employer's business. Davis v. McKinney, Mo.App., supra; Dost v. Pevely Dairy Co., supra; McCaleb v. Greer, 241 Mo.App. 736, 267 S.W.2d 54; Schroepfer v. Hudson, 214 Minn. 17, 7 N.W. 2d 336, 337, loc.cit. 338. Thus, it is firmly established by judicial decision that a workman is not a farm laborer simply because at the moment he is doing work on a farm; nor because the task on which he is engaged is sometimes performed by a farm laborer. Heffner v. White, 113 Ind.App. 296, 45 N.E.2d 342, petition denied 221 Ind. 315, 47 N.E.2d 964; Hiestand v. Ristau, 135 Neb. 881, 284 N.W. 756; Peterson v. Farmers' State Bank, 180 Minn. 40, 230 N.W. 124; Schroepfer v. Hudson, supra; I Larson, Workmen's Compensation Law, Sec. 53, page 777 ff. In Heffner v. White, supra, claimant who did odd job carpentry work was employed to go to employers' farm and there remodel an old summer kitchen and wood house for use as hog house. Claimant was injured shortly after commencing this work. The contentions there made by employers are much the same as those made here by respondents. We refer to the Indiana Court's opinion which meets our approval in what it said on the subject, 45 N.E.2d loc.cit. 344:

"The hog house on which appellee was working at the time of his injury was to be used by said appellant in caring for his hogs, and was, therefore, reasonably necessary to the proper conduct and prosecution of John Heffner's business. In view of the facts and the reasoning set forth in the foregoing authorities, we are of the opinion that the work of the appellee in remodeling the building here involved was employment in the usual course of the employer's business.

"Appellant argues that if appellee's employment was in the usual course of his employer's business, then it necessarily follows that appellee was a farm or agricultural employee, and is, therefore, precluded from recovery by Section 40–1209 Burns' 1933, Section 16385, Baldwin's 1934, which excludes farm and agricultural employees from the benefits of the act. With this contention we cannot agree. One engaged in the business of farming, either generally or in a limited way, is frequently required to employ laborers who are not and cannot be classified as farm or agricultural employees. In the case of Makeever v. Marlin, 1931, 92 Ind.App. 158, 174 N.E. 517, the court approved the following language of the case of Peterson v. Farmers' State Bank, 1930, 180 Minn. 40, 230 N.W. 124; '* * * A farm laborer does not step out of his own part while doing carpenter work for his farmer employer in the repair of farm buildings. Neither does the carpenter who comes onto the farm for the job of carpentry and nothing more. One continues a farm laborer and the other does not become one.'

\* \* \* \* \* \*

"Appellee was not employed to do general farm work, but was employed to exercise his skill as a carpenter, and the fact that he was employed to remodel a farm building does not change the character of his work from carpentry to farm labor."

For other helpful authorities discussing the meaning of the term "farm labor" see I Larson, Workmen's Compensation Law, Sec. 53, page 774 ff. (page 782, a carpenter working on a farm building); Makeever v. Marlin, 92 Ind.App. 158, 174 N.E. 517; Strickler v. Sloan, Ind.App., 141 N.E.2d 863; Hahn v. Grimm, 101 Ind.App. 74, 198 N.E. 93, 94; Peterson v. Farmers' State

Bank of Eyota, 180 Minn. 40, 230 N.W. 124; Schroepfer v. Hudson, supra; Hiestand v. Ristau, supra; Davis v. McKinney, supra; Dost v. Pevely Dairy Co., supra; McCaleb v. Greer, supra; Plemmons v. Pevely Dairy Co., supra.

In view of the foregoing authorities and their reasoning it seems logically inescapable to us that claimant, who had been generally engaged in doing carpentry work in his locality, and who was employed to do that type of work in assisting in the taking down of the purchased barn and re-erecting it on the Conners' farm was not engaged in an employment of farm labor within the meaning of the Workmen's Compensation Act. We so hold. And the record is such that what we have said about claimant applies with equal force to the other five men who were likewise employed to assist in dismantling the old barn, taking it to the Conners' farm and there reassembling it. We conclude that there was competent and substantial evidence before the Industrial Commission from which it could properly find that they were not in an employment of farm labor within the meaning of the act, and absent some other reason could be counted in arriving at the more than ten regular employees necessary to constitute the Conners as major employers.

Although respondents have not made a separate point of it, they also contend that the employment of claiment and the others who worked on the barn moving project was casual or not incidental to the operation of the farming business of the employers, thus removing claimant from the benefit of the act and causing the others not be counted in determining whether the Conners were major employers. See Section 287.090(3). Appellant contends these men were regularly employed within the meaning of the act and that the employment was not casual. See Section 287.050. As indicated in the quoted portion of the Heffner opinion there is ample and sound authority, with which we agree, to the effect that such things as ·repairs to farm. buildings or the additions to existing farm buildings are incidental to the operation of a farm. See Garrison v. Gortler, 234 Iowa 541, 13 N.W.2d 358; Mc-Kay v. Delico Meat Products Co., 351 Mo. 876; 174 S.W.2d 149; March v. Bernardin, 229 Mo.App. 246; 76 S.W.2d 706; Heffner v. White, supra; Hiestand v. Ristau, supra; I Larson, Workmen's Compensation Law, Sec. 51.

The more difficult question is whether or not these employments were casual. In Fowler v. Baalmann, Mo., 234 S.W.2d 11, 15, our Supreme Court, en Banc, held, "The word 'regular' is used in the act as an antonym of the word 'casual,' and, when an employee is regular, or 'regularly employed,' he is not casual." The definition section of the compensation law does not define the word "casual" but numerous appellate court decisions shed their light on its meaning as used in the act. One of the more comprehensive cases on the subject is Norris v. Koenig, Mo.App., 183 S.W.2d 160, 162, where this court said:

"Adjudications render the solution easier than would at first appear. In this connection, it must first be observed that the test in determining whether claimant is barred by the statute on the ground that the employment was casual is not the nature of the contract of employment or length of time the employee is occupied, but is to be determined by the employment or work which he is doing. In the case of Sonnenberg v. Berg's Market, 227 Mo.App. [391] loc. cit. 394, 55 S.W.2d 494, loc. cit. 495, in a discussion of the meaning of the word casual and to what it refers, it is said: 'It is a mistake to suppose, however, that the word, as used in the act, refers to the employing of the particular employee. For this is not so. The word, as used in the act, refers to the employment, or work, the employee is engaged to do. It is the employment, not the employing of the particular employee, that is determinative. The question is not whether or not the employing of the particular employee was

casual, but the question is whether or not the employment, or work, was casual.' This pronouncement has been adopted by the Supreme Court in the case of Tokash v. General Baking Co., supra, 349 Mo. [767] loc. cit. 771, 163 S.W.2d 554, and in the McFall case, supra [McFall v. Barton-Mansfield Co.], 333 Mo. [110] loc. cit. 124, 61 S.W.2d 911.

"The definition section of the compensation law does not define the word casual, but Judge Gantt in Tokash v. General Baking Co., 349 Mo. loc. cit. 771, 163 S.W.2d 554, adopts the definition of the word as made in the Sonnenberg case, supra, 227 Mo.App. loc. cit. 394, 55 S.W.2d loc. cit. 495, as follows: 'The lexical meaning of the word "casual" is as follows: Happening or coming to pass without design, and without being foreseen or expected; accidental; fortuitous; coming by chance; coming without regularity; occasional; incidental. This is the ordinary meaning of the word, and is evidently the sense in which it is used in the act.' "

Other enlightening cases defining and applying the word "casual" are: Tokash v. General Baking Co., 349 Mo. 767, 163 S.W. 2d 554 (employing a stranger to help paint a bakery building); Sonnenberg v. Berg's Market, 227 Mo.App. 391, 55 S.W.2d 494 (employment of extra meat cutter for Saturday work); McFall v. Barton-Mansfield Co., 333 Mo. 110, 61 S.W.2d 911 (employment of extra help for carpentry work); Barlow v. Shawnee Investment Co., supra (numerous employments); March v. Bernardin, supra (employment to repair boilers annually requiring repair work); Kennedy v. J. D. Carson Co., Mo.App., 149 S.W.2d 424 (employment to keep elevators of building in repair); Smith v. Grace, supra (occasional employment to renovate and repair buildings); McKay v. Delico Co., supra (employment of bricklayers to construct smokehouse); Nabors v. United Realty Co., Mo.App., 298 S.W.2d 474 (drayage employ-

ment to remove hot water tanks from building); Heffner v. White, supra (employment of carpenter to remodel farm building); Hiestan v. Ristau, supra (employment of carpenter to shingle barn); Utah Copper Co. v. Industrial Commission, 57 Utah 118, 193 P. 24, 13 A.L.R. 1367 (employment of farmer to repair canal); Holmen Creamery Ass'n. v. Industrial Commission, 167 Wis. 470, 167 N.W. 808 (special employment to repair building). It would unduly prolong this opinion to separately analyze each of the above cases. We have examined them carefully. It is noteworthy that in all of them except the Nabors case the court held that the particular employment was not a casual one within the meaning of the Compensation Act. These cases make it clear that neither the contemplated length of the employment nor the length of time the employee works before the occurrence of the injury is a persuasive factor but that a consideration of whether or not the particular employment, such as to make certain repairs or perform certain construction work, belongs to the category of things to be expected and provided for by employer is pertinent. If it is usual to or necessary to the employer's business, even though it comes at irregular intervals which cannot be accurately foretold, or comes as convenience dictates, it is considered as being a sufficiently essential and integral part of employer's business to cause him and that business to bear the burden imposed by the Compensation Law.

██ There was testimony that a barn was necessary to the Conners' operation of their farm which included raising cattle for market. The Commission by finding for claimant impliedly found that the employment of those who worked on the barn project was incidental to but not casual to the farming business of the Conners. While the question presented admittedly is a close one, we will not hold as a matter of law that the decision of the Commission is erroneous. As we view the question, we have concluded that the employment of claimant and the others to do the carpentry and other neces-

sary work to take down the old barn and to re-erect it on employers' farm is not a casual employment within the meaning of the Compensation Act.

■ Respondent's brief also suggests that the Compensation Act does not permit the charging of employers with employees engaged in separate businesses and in different states such as those employed on the Missouri farm barn project and in the Illinois Tavern Operation. In the very recent decision of Harmon v. Rainey, Mo., 306 S.W.2d 469, loc. cit. 471, our Supreme Court held against this contention, saying: " *. * * The Missouri courts have ruled that the employees that may be counted to constitute the required number need not be employed at the same place, or even within Missouri, because Section 287.050 defines a major employer as ' "an employer who has more than ten employees regularly employed," without restriction as to place,' and the statute 'is to be given its plain unrestricted meaning.' McFall v. Barton-Mansfield Co. [supra]. See also, Elsas v. Montgomery Elevator Co., 330 Mo. 596, 50 S.W.2d 130. Just as there is no restriction in the statutes as to the place of employment, there also is no restriction that the employees who may be counted to constitute the required minimum number must be employed in the same business. The only requirements are that they not be in an employment exempt from the application of Section 287.050 by reason of the provisions of Section 287.090, and that they all be employed by the same employer."

We conclude by taking into consideration the testimony concerning claimant and the others working on the barn project (six in all) together with the testimony concerning the employees at the Illinois tavern (five in all) the Commission had before it competent and substantial evidence supporting its finding that the Conners were major employers within the meaning of the Compensation Act. It becomes unnecessary for us to consider whether or not respondents are correct in their contention that the employ-

ees of the Illinois electrical partnership are not the employees of the Conners as such but are the employees of a separate employing unit and thus cannot be counted in determining whether they are major employers. Cf. Kalson v. Industrial Commission, 248 Wis. 393, 21 N.W.2d 644; Brollier v. Van Alstine, 236 Mo.App. 1233, 163 S.W.2d 109.

The final contention is made by Insurer. It states that there is no insurance coverage for this accident and resultant injury. Claimant and employers say that even if there is none, insurer is estopped to assert such fact by its conduct in leading them to believe there was coverage, in taking over the investigation of the accident on behalf of employers as well as itself, by serving as employers' attorney and in such capacity filing the required pleadings, one of which contained its statement that "If any liability it was covered by the Hartford Accident and Indemnity Company", by appearing as their counsel at the trial, making admissions concerning employers during the trial, and in otherwise conducting employers' defense at the trial. Insurer says it acted under a mistaken belief that its policy issued to Albert F. Conner in connection with his Illinois electrical partnership provided coverage, and that as soon as it learned of its error it withdrew as employers' counsel, withdrew its mentioned pleading concerning its coverage, and denied coverage. Insurer's withdrawal as employers' counsel and denial of coverage occurred shortly after the end of the hearing on the separate claim against Albert F. Conner before the referee but several weeks before the hearing of the separate claim against Mary W. Conner. At the time of the hearing of the claim against Mary W. Conner, the referee reopened the Albert F. Conner hearing and permitted all parties to make any further record they desired. At this hearing the employers were represented by new counsel of their own selection who stipulated with insurer and claimant that all evidence heard in the Albert F. Conner claim would be applicable to the Mary W. Conner claim, and

in effect agreed to their consolidation. Insurer made its formal record of withdrawal as employers' counsel and its formal denial of coverage of the claims and introduced in evidence the insurance policy naming Mary W. Conner as the insured and which policy the commission found by its terms provided coverage. Employers then undertook to show that they had been prejudiced by insurer's representation of them and its conduct of their defense at the earlier hearing, especially because of certain admissions of fact it made on their behalf. Appellant says there was no actual prejudice that resulted, and that employers had a copy of the policy and should have known there was no coverage. Appellant particularly argues that the facts regarding the nature of claimant's employment and the nature and number of employees employed by the Conners came principally from Mr. Conner, who after he had independent counsel did not indicate any desire to question those facts as developed to that point or to add to them, and that there is nothing in the record to show that the Conners adopted any different position with respect to the claim than they would have adopted with independent counsel. Appellant denies that the elements of true estoppel are present or that the doctrine of estoppel is applicable.

We have carefully examined the insurance policy in question. There is no claim that it contains any ambiguity. It was issued to Mary W. Conner in connection with her tavern business located in Peoria, Illinois, and clearly provides coverage only for claims against her brought under the Workmen's Compensation Law of the State of Illinois. It does not provide coverage for claims brought under the Missouri Compensation Law. The Industrial Commission erred in its finding that *under its terms* it insured Mrs. Conner on this casualty. Nor in this case are we willing to apply any doctrine of waiver or estoppel so as to cause coverage where the policy itself clearly never provided coverage.

While waiver and estoppel may prevent an insurer from asserting a *defense* to cov-

erage otherwise provided by an insurance policy our Missouri appellate courts so far as we have been able to ascertain have not yet permitted the use of either waiver or estoppel to establish coverage in the first instance where none existed before. Nor has counsel endeavored to cite such a case. The authorities outside this state are in apparent conflict. In 29 Am.Jur., Insurance, Sec. 903, page 690, the rule is stated: "The doctrines of implied waiver and of estoppel, based upon the conduct of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom; and the application of the doctrine in this respect is, therefore, to be distinguished from the waiver of, or estoppel to deny, grounds of forfeiture." In 45 C.J.S. Insurance § 674 (a), p. 616, it is stated: "As a general rule, the doctrines of waiver or estoppel can have a field of operation only when the subject matter is within the terms of the contract, and they cannot operate radically to change the terms of the policy so as to cover additional subject matter. Accordingly, it has been held by the weight of authority that waiver or estoppel cannot create a contract of insurance or so apply as to bring within the coverage of the policy property, or a loss or risk, which by the terms of the policy is expressly excepted or otherwise excluded. * * * There are, however, broad expressions in some of the cases to the effect that the company may waive a defense of lack of coverage, or may by its conduct become estopped to deny that the loss is within the terms of the contract. Further, some authorities make a distinction between waiver and estoppel, and although recognizing that the coverage of the policy cannot be extended by waiver, hold that the company may be estopped to deny a broader or different coverage than that specified by the terms of the policy." Two Missouri cases contain dicta indicating that situations may possibly arise where estoppel can be used to provide a broadened or different coverage. See Graham v. Gardner, Mo.App., 233 S.W.2d 797, 802; Blanke-

Baer Extract & Preserving Co. v. Ocean Accident & Guarantee Corp., Mo.App., 96 S.W.2d 648, 652, quashed on other grounds State ex rel. Ocean Accident & Guarantee Corp. v. Hostetter, 341 Mo. 488, 108 S.W. 2d 17. Other Missouri cases and apparently well reasoned outstate authority indicate estoppel and waiver are not available to broaden the coverage to include that which is clearly not within the coverage of the policy or expressly excluded from coverage by its terms. In these cases the rule is generally expressed that estoppel and waiver do not themselves give a cause of action, and that the purpose of estoppel is to preserve rights previously acquired but not to create new ones. See Berry v. Massachusetts Bonding & Insurance Co., 203 Mo.App. 459, 221 S.W. 748, 751; Linenschmidt v. Continental Casualty Co., 356 Mo. 914, 204 S.W. 2d 295, 296; Rosenberg v. General A. F. & L. A. Co., Mo.App., 246 S.W. 1009; Hunter v. Jefferson Standard Life Insurance Co., 241 N.C. 593, 86 S.E.2d 78; Peters v. Great American Insurance Co., 4 Cir., 177 F.2d 773; Kinard v. Mutual Benefit Health & Accident Ass'n, D.C., 108 F.Supp. 780; 16 Appleman, Insurance Law and Practice, Sections 9083, 9090; Annotation: Insurance, 113 A.L.R. 856; Annotation: Liability Insurance-Waiver-Estoppel, 38 A.L.R. 2d 1148.

In the instant case *after* employers knew insurer was withdrawing as their counsel and was denying liability employers through their newly selected counsel were granted full opportunity to make any record they wished in the hearing on the claim against Mr. Conner and they then agreed that the record as made in that case would also be considered as made also in the case on the claim against Mrs. Conner. In effect they agreed to a consolidation of the two claims which had been separately filed. They do not charge insurer with any mismanagement or bad faith in its representation of them to that point, and obviously, insurer's interests coincided with those of employers in resisting on the merits claimants' case filed against them as employer and insurer

respectively. It is not necessary for us to pass on the question of whether or not the doctrines of waiver or equitable estoppel apply for it is apparent that the facts do not disclose that all the necessary elements are present. Nor did the Industrial Commission rest its finding and award against the insurance company on any basis of waiver or estoppel.

Respondents have suggested other questions, such as whether the insurance policy issued to Mr. Conner in connection with his Illinois Electrical partnership likewise covering only claims against him under the Illinois Workmen's Compensation Act, Ill. Rev.St., c. 48, § 138.1 et seq., apply. What we have said disposes of these suggestions.

The judgment of the circuit court is, accordingly, reversed and the cause remanded with directions to the trial court to reverse the award of the Commission and to direct the Commission to enter a new award discharging the insurer and to enter its award against employers only, all in accordance with the views expressed in this opinion.

All concur.