**WESTERN CASUALTY AND SURETY COMPANY, a Corporation, Plaintiff,**

v.

**Carmen N. SALERNO and Wallace W. Humes, Defendants.**

No. 62 C 159(2).

United States District Court
E. D. Missouri, E. D.
June 13, 1963.

Rene J. Lusser, Lusser & Morris, St. Louis, Mo., for plaintiff.

Robert E. Staed, Kappel & Neill, St. Louis, Mo., for defendant Salerno.

Hal B. Coleman, Clayton, Mo., for defendant Humes.

MEREDITH, District Judge.

This action for declaratory judgment was instituted by the plaintiff to determine the rights of all parties pursuant to 28 U.S.C.A. § 2201. The cause was tried to the Court without a jury and the Court hereby makes the following findings of fact and conclusions of law:

The plaintiff is a corporation organized under the laws of the State of Kansas with its principal office there; the defendants are both citizens and residents of the State of Missouri; the amount involved is in excess of $10,000, and the Court has jurisdiction.

Plaintiff issued a comprehensive personal liability policy covering the period April 7, 1958, to April 7, 1961, to the defendant Carmen N. Salerno, 900 Charbonier Road, St. Louis County, Missouri, with a limit of liability of $50,000 for each occurrence and $500 medical payments for each person.

On March 23, 1959, during the effective period of the policy of insurance, defendant Wallace W. Humes was employed by the defendant Carmen N. Salerno to "pony" three horses owned by the defendant Salerno on the premises at 900 Charbonier Road. On that date, while so employed, one of the horses, a race horse named "Sal's Son", bit defendant Humes in the leg. The incident was promptly reported by defendant Salerno to plaintiff insurance company and that company began its investigation. Plaintiff's adjuster, William McCleod, interviewed defendant Salerno at his office, and on April 1, 1959, took a statement at the Salerno residence at 900 Charbonier Road from Mrs. Salerno in which she stated that defendant Humes was ponying the stallion around the one-sixth mile track on the premises and that defendant Humes was a regular jockey at Fairmount and Cahokia and had ridden for them at the tracks.

On June 22, 1959, defendant Humes filed suit against defendant Salerno and his wife Mildred Salerno, seeking damages in the amount of $26,750, in the Circuit Court in St. Louis County. The petition alleged, in part, that defendants were the owners of a race horse and that in preparation for the forthcoming season, defendants hired Humes to train and exercise the race horse and that he was injured while training and exercising the race horse.

Plaintiff retained counsel to protect the rights of defendant Salerno and this counsel continued to do all the necessary things in preparation for trial, including the taking of depositions, submitting interrogatories, filing motions regarding answers thereto and investigative work. Defendant Salerno cooperated as provided by the policy. Plaintiff controlled the defense.

On July 30, 1959, defendant's adjuster McCleod, accompanied by a court reporter, took defendant Salerno's statement at his office. This fifteen-page question and answer statement reveals that defendant Salerno had yearlings to be broken every year, that he had raised Sal's Son and that the horse involved was a race horse.

On September 16, 1959, defendant Salerno's deposition was taken by Humes in the state court action. In this deposition, taken at the offices of counsel retained by the plaintiff insurance company, defendant Salerno stated that he had from twelve to twenty-two horses at 900 Charbonier Road.

On March 31, 1960, the petition in the state court action was amended to increase the amount of damages to $80,000.

On or about April 1, 1960, the plaintiff in making further investigation at the race tracks in East St. Louis, Illinois, discovered that defendant Salerno's racing activities were extensive in nature. On April 6, 1960, the insurance company filed a declaratory judgment action in the state court naming as defendants, Carmen N. Salerno and Wallace W. Humes. This suit was instituted for the purpose of ascertaining the rights of the parties and particularly as to whether or not defendant Salerno was covered under the policy issued by plaintiff in regard to the law suit filed by defendant Humes against Salerno. Plaintiff asserted in that action that it had ascertained that the insured, defendant Salerno, was operating a racing horse farm and that he was engaged in the business of buying, selling, raising and racing horses for profit and that under the provisions of the policy of insurance, such business pursuits of defendant Salerno were specifically excluded.

On April 7, 1960, by letter, plaintiff insurance company notified defendant Salerno of three occurrences: (1) that a serious question as to coverage had arisen and, therefore, it would continue defense of the insured only under an express reservation of rights, which was set out, (2) that a declaratory judgment action had been filed, and (3) that in Humes v. Salerno, the petition had been amended to increase the prayer to an amount in excess of the policy limits and advised defendant Salerno to retain his own counsel.

Defendant Salerno rejected the plaintiff's continuance of the defense with a reservation of rights.

On April 26, 1960, the counsel for defendant Salerno, who was employed by plaintiff insurance company to defend the suit of Humes v. Salerno, applied to the Circuit Court of St. Louis County, Missouri, to withdraw as counsel for defendant Salerno. Objection was made by the counsel for the plaintiff Humes to the withdrawal of defendant Salerno's counsel and on May 9, 1960, the Judge of the St. Louis Circuit Court denied permission to defendant Salerno's counsel to withdraw.

The trial in the Circuit Court of St. Louis County in the case of Humes v. Salerno was commenced on June 13, 1960, and resulted in a judgment in the amount of $32,000 against Salerno and in favor of Humes. On the basis of the state court's denial of permission to withdraw as counsel for defendant Salerno, the plaintiff insurance company herein continued with the defense in that case to final judgment through appeal to the Supreme Court of Missouri. On December 28, 1961, the Supreme Court of Missouri affirmed the judgment in the case of Humes v. Salerno on condition of remittitur by the plaintiff to reduce the judgment to the amount of $23,500. This was done and the judgment now stands against defendant Salerno in the amount of $23,500.

In the declaratory judgment suit filed by the insurance company against Salerno and Humes in the state court on April 6, 1960, a number of proceedings were had and the suit was dismissed by the plaintiff without prejudice on April 17, 1962.

In the meantime, on November 29, 1961, a petition for declaratory judgment suit was filed in the Federal Court for the Eastern District of Missouri embodying the same cause of action as is now before this Court in this suit.

The suit in the Federal Court of the Eastern District of Missouri was argued before the Court on April 16, 1962, on motion of the defendants Salerno and Humes to dismiss for the reason that an identical suit was pending in the Circuit Court of St. Louis County, Missouri. An order of dismissal in the Federal District Court was entered on April 20, 1962. The present declaratory judgment suit was filed here on April 23, 1962, and the declaratory judgment suit in the state court was dismissed.

Turning now to the question of whether or not the defendant Salerno was engaged in a business at his residence which would exclude coverage under the terms of the policy in the suit of Humes v. Salerno, the accountant who prepared the tax returns for defendant Salerno testified that he had prepared joint returns for defendant Salerno and his wife and these returns for the years 1956 through 1960 were introduced in evidence.

In Schedule C, Form 1040, denominated "Profit or Loss from Business or Profession", in Item A of said Schedule, the defendant Salerno stated the principal activity to be "race horse stable and farm". For the five years in question, 1956 through 1960, he showed a total gross income of $60,081.55, expenses of $169,404.96, and a net loss from farm and racing stables of $109,323.41. The business deductions for these same years included deductions for jockey mounts and training fees, feed for horses, caretaker's wages, vaning and breeding, depreciation on buildings and equipment, depreciation of horses, and traveling. These same tax returns show that defendant Salerno's net profit from his profession as an osteopathic physician during those five years was $184,912.26, his net loss from farm and stables operations amounted to $113,923.41 and his adjusted gross income amount of $70,988.85. The net tax savings for the five-year period in question as a result of deducting the losses from his farm and stables operations was a tax saving of approximately $42,000.

The 1958 and 1959 tax returns of defendant Salerno listed 19 horses as being owned by him during the two-year period. Of these horses, 11 were bred or born at 900 Charbonier Road, St. Louis County, Missouri, and 8 of these horses were purchased. In claiming a depreciation in the schedules applicable to farm and stable operations, defendant Salerno claimed depreciation on the following real and personal property all situated at 900 Charbonier Road: hay barn and garage, caretaker's house, horse barn, smoke house, cow barn and garage, chicken house, tractor, weed mower, paint sprayer, hot water heater, Plymouth station wagon.

In defendant Salerno's depositions made on January 3, 1962, and November 13, 1962, he stated as of March 23, 1959, the date of the Humes accident, he owned 9, 10 or 11 horses, that these horses were kept at his residence and that two of them were in New Orleans for racing purposes, that he traded horses at public sales and at various race tracks, which horses were kept and maintained at the Charbonier Road premises, that he commenced maintaining, buying, selling and breeding in 1947 or 1948, and that all the horses, were kept at the Charbonier Road premises, except when they were sent to various tracks for racing purposes. He had both mares and studs on the Charbonier Road premises. Horse breeding operations were performed at the residence in the year 1959. Defendant Salerno kept records of receipts and disbursements in connection with the farm and stables operations.

It is evident that the Charbonier Road premises were the hub of defendant Salerno's racing operations and that the horse racing operation was a business pursuit.

The policy contained the following provisions:

Paragraph (a) of the "Exclusions" of the policy provides:

"This policy does not apply:

"(a) to any business pursuits of an insured, other than activities therein which are ordinarily incident to non-business pursuits; or to the rendering of any professional service or the omission thereof; or to any act or omission in connection with premises, other than as defined, which are owned, rented or controlled by an insured."

The "Additional Premises Endorsement", attached to and made a part of the insurance policy, in paragraph 2(a) of said Endorsement, provided:

"2(a) The insurance does not apply:

"While business pursuits are conducted at such premises with the knowledge of the insured who owns or rents such premises, unless such pursuits are specifically declared in this endorsement or consist of office, school or studio occupancy by a person other than an insured."

Subparagraph (a) of paragraph IV of the "Insuring Agreements" provided:

"(a) Premises. The unqualified word 'premises' means (1) All premises where the named insured or his spouse maintains a residence and includes private approaches thereto and other premises and private approaches thereto for use in connection with said residence, except business property and farms."

Subparagraph (b) of "Item 4" of the "Declarations", provided:

"No business pursuits are conducted at the premises." (No exceptions.)

The policy of insurance is not ambiguous. The risk of liability for damages arising out of a business pursuit of defendant Salerno was not covered by the policy. It was specifically excluded by the terms of the policy. While some effort was made to show that the horse racing activity was a "hobby", rather than a business pursuit of defendant Salerno, we have found that the evidence conclusively establishes that this was a business pursuit.

The major legal question presented is the applicability of the doctrines of waiver and estoppel, under Missouri law, to the conduct of plaintiff insurance company in defending the state court action in which defendant obtained a judgment from defendant Salerno.

Plaintiff contends that it is the general law, as well as the law of Missouri, that coverage of an insurance policy can never be extended or broadened by waiver or estoppel. Defendants challenge this proposition and state that under Missouri law the insurer's assumption of defense without a reservation of rights or an attempted reservation of rights until some ten months after institution of the action against the insured precludes the insurer from asserting noncoverage. Defendants further contend that plaintiff's appeal to the Supreme Court of the judgment in Humes v. Salerno is another ground for estoppel. Inasmuch as plaintiff's application to withdraw its counsel was denied by the trial court, we are of the opinion that this basis of waiver is without merit.

From our case study of Missouri law, we have concluded that plaintiff's categorical proposition that waiver or estoppel can never be extended to broaden coverage cannot be sustained. While plaintiff has cited a number of cases from other jurisdictions, we are here concerned with the law of Missouri to which our discussion accordingly will be confined.

When an insured has failed to comply with terms of the policy in respect to matters such as giving notice or filing

proofs of loss within a certain length of time, the insurer's conduct, in assuming defense of a case when it knew or should have known of insured's non-compliance, results in a waiver of the requirements of the policy. Examples are Schmidt v. National Auto and Cas. Ins. Co., (C.A.8, 1953) 207 F.2d 301, and Missouri Managerial Corp. v. Pasqualino, (Mo.App., 1959) 323 S.W.2d 244. While in the latter case the statement that coverage cannot be extended by waiver or estoppel is made, that proposition is not demonstrated by the decision since it did not involve coverage of the events insured against under a policy with the named insured. However, Blew v. Conner, (Mo.App., 1958) 310 S.W.2d 294, did consider whether waiver or estoppel was applicable to provide coverage for a claim arising under the Missouri Compensation Law when the policy by its terms covered only claims against the insured arising under the Workmen's Compensation Law of Illinois. The Supreme Court of Missouri, in Blew v. Conner, 328 S.W.2d 626, approved the Kansas City Court of Appeals' statement at 310 S.W.2d 294 that waiver or estoppel cannot be used to establish coverage in the first instance when none existed. Plaintiff's interpretation of that statement, however, is not substantiated since the Court specifically pointed out that waiver or estoppel would not be considered because all the necessary elements were not present.

There are several Missouri cases which have in fact found the essential elements of estoppel or waiver present and applied those doctrines to broaden the coverage of the events insured under a policy with the named insured:

Fairbanks Canning Co. v. London Guaranty & Accident Co., (1911) 154 Mo. App. 327, 133 S.W. 664, held that where the policy in fact did not cover loss from liability caused by an insured's employee under 14 years of age, nonetheless estoppel prevented the insurer from denying coverage to its insured on its belated discovery, after assuming defense for the insured, that the employee involved was in fact under 14 years of age. It is significant to note that the insured's knowledge was that the employee was 16 years of age. The insurance company, having learned of the employee's age while taking his deposition ten months after the action was commenced, withdrew from the defense. The Court, holding that the insurance company acting carelessly could proceed without knowledge and thereafter be precluded from asserting non-coverage because the insured had a right to assume the insurance company was acquainted with the situation and was taking such action as it deemed most prudent for its own interests, stated at 133 S.W. 666:

"* * * If, instead of relying upon his right when the claim was first brought to his attention, he, without due investigation, assumes himself to be liable, sets the assured aside and claims the right of control of the defense, he cannot afterwards ignore the right the assured has acquired by reason of such action merely because he has made a belated discovery of fact, or law, which he thinks puts the case outside the terms of the policy."

Similarly, in Royle Mining Co. v. Fidelity & Casualty Co., (1912) 161 Mo. App. 185, 142 S.W. 438, the employer was insured for common law liability to its employee, but was not covered for statutory liability. In an action by the employee for damages, the employer-insured's liability was predicated on a statutory violation. The Court held that the insurance company, failing to take a reservation of rights, could waive the question of coverage of statutory liability by assuming the defense of its insured with full knowledge that the claim was based on a statutory violation.

While the major question in National Battery Co. v. Standard Acc. Ins. Co., (1931) 226 Mo.App. 351, 41 S.W.2d 599, appears to have been one of delayed notice, still the issue of coverage was involved, for the Court states at 41 S.W.2d page 604,

"* * * defendant was in possession of all the facts and had all the

knowledge which it now has, at the time it assumed liability, and by its conduct then elected its course, waived the question of delayed notice and the alleged breach by plaintiff of the provision of the contract in reference thereto, *as well as the question of the liability being within the terms of the policy.* * * * *" (Emphasis supplied.)

To the same effect is Consolidated Elec. Coop. v. Employers Mut. Liabil. I. Co., (E.D.Mo., 1952) 106 F.Supp. 322, where, in pertinent part, an applicable unambiguous provision of a policy excluded coverage for damages to pipes below the surface of the ground. The plaintiff-insured's employees dynamited a Panhandle Eastern Pipe line below the surface of the ground. The insured advised the insurance company of the nature of the accident. Panhandle sued the insured for damages to its pipes. The insurance company defended without reservation of rights. The Court found in the subsequent proceeding that the defendant insurance company had "waived" the provision excluding coverage.

Helm v. Inter-Insurance Exchange for Auto. Club, (1946) 354 Mo. 935, 192 S.W. 2d 417, was a tort action alleging the insurance company's negligence in withdrawing its attorneys at a crucial stage from the defense of an automobile accident case involving the insured's son. The policy did not apply while the car was driven by a person under 16 years of age. Notified of the accident, the insurance company took a statement from the insured's son, the driver of the insured's automobile, who misstated his age as 16. On voir dire it was revealed that the driver was 15. The insurer's lawyers promptly withdrew. Judgment was entered against the insured for damages involved in the automobile accident. In trial court on the tort action for withdrawal of the insurance company's attorneys, there was a judgment for the insured's son. In reversing on appeal for error in not sustaining the insurance company's demurrer to the evidence, the Supreme Court of Missouri stated:

"Under the decisions of the courts of this state there was a strong probability that defendant (the insurance company) would be held to have been estopped to deny liability under the policy if it continued the defense."

■■ From these cases we have determined that under Missouri law when all the elements of estoppel are present, it may be used to extend or broaden the coverage afforded to the named insured. The crucial element in each case cited in which estoppel has been recognized is the relative and innocent knowledge of both the insured and the insurer of the facts of the event which created the potential liability of the insurer. What estoppel cannot do is perhaps best illustrated in the case of Mistele v. Ogle,. (Mo.Sup., 1956) 293 S.W.2d 330. While we do not mean to oversimplify the involved factual situation present there,. still this much is clear from an otherwise confusing factual picture. The insurance company had issued an automobile liability policy to Dan Ogle. The driver of the car involved in the automobile accident was Dale Ogle. The automobile involved may have been owned by Dan or Dale. The Court held that if the car involved was in fact owned by Dan, the named insured, the insurer by assuming defense with knowledge of the circumstances, could have waived the delayed notice of a newly acquired automobile. However, this assumption of defense could not create estoppel as to Dale, if Dale in fact owned the automobile involved since an insurance contract never existed between Dale and the insurance company. The same principle is stated in Linenschmidt v. Continental Casualty Co., (1947) 356 Mo. 914, 204 S.W.2d 295.

■ Applying now the law of Missouri as we have found it to the instant facts, have defendants sustained their burden of proving every element of estoppel? As set out in United Finance Plan v. Parkview Drugs, (Mo.App., 1952) 250 S.W.2d 181, l. c. 184, relying on Taylor

v. Farmers Bank of Chariton County, (Mo.App.) 135 S.W.2d 1108, 1111, the essential elements are:

"(1) There must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or, at least, the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time when it was acted upon by him. (4) The conduct must be done with the intention, or, at least, with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. (5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. (6) He must in fact act upon it in such a manner as to change his position for the worse."

We think the question is a close one. With respect to elements (1), (4), (5), (6), it is clear to this Court that the defendants have met their burden because of the plaintiff's prolonged defense of the insured in the state court action without a reservation of rights. However, we have concluded that the facts known or that should have been known by the plaintiff regarding the horse racing operation between the time of the assumption of the defense and its attempted reservation of rights and attempted withdrawal from the state court action were better and more accurately known by defendant Salerno. Plaintiff within days after the report of the accident knew or should have known the horse involved was a race horse. Certainly such was known from the first petition. In September of 1959, five months after the accident, plaintiff knew or should have known that defendant Salerno main-

tained from twelve to twenty-two race horses on his premises and that race horses were raised and bred there. Further, at approximately this same time plaintiff knew or should have known that the horses were raced for purses at Fairmount and Cahokia. These facts were not concealed by defendant Salerno. While we cannot condone plaintiff's long delay in attempting to reserve its rights and withdraw from the case, and while it was under a duty to make a reasonable determination of its position based on the facts that it knew or should have known, still the plaintiff had a right to rely on defendant Salerno's declaration in the policy that no business pursuits were conducted on his premises and in view of that declaration, plaintiff might reasonably assume from the fact within its knowledge that the horse racing operation was a hobby rather than a business pursuit.

There was at the least one key fact, unknown to plaintiff, known to defendant Salerno and not disclosed by him. In his income tax report, defendant Salerno treated the farm and racing stables as a business operation. We, therefore, have concluded that defendant Salerno has failed to prove the essential elements of estoppel.

From the foregoing it follows that the plaintiff is entitled to a declaratory judgment determining its rights and liabilities under the policy of insurance and the policy of insurance issued by the plaintiff to the defendant Salerno afforded no coverage to the defendant Salerno for the acts of March 23, 1959, wherein the defendant Wallace W. Humes was injured. The plaintiff is not liable for the payment of the judgment in the case of Wallace W. Humes v. Carmen N. Salerno entered in Cause No. 229941 of the Circuit Court of the County of St. Louis, Missouri, and affirmed by the Supreme Court of Missouri, Humes v. Salerno, 351 S.W.2d 749. Judgment will be issued accordingly with the cost of this proceeding to be assessed against defendant Salerno.